RITA MARÍA SANTIAGO y RAFAEL RAMOS COBIÁN, demandantes y recurridos, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrente.

*Números:* 12803, 12804   *Resueltos:* 15 de febrero de 1963

*J. B. Fernández Badillo, Procurador General,* y *Carlos G. Láti-mer, Procurador General Auxiliar,* abogados del recurrente; *Víctor Gutiérrez Franqui* y *Federico Ramírez Ros,* abogados de los recurridos.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del Tribunal.

En octubre 11 de 1950 el Tesorero de Puerto Rico envió a cada uno de los contribuyentes Rafael Ramos Cobián y Rita M. Santiago[1] una notificación preliminar de deficiencia de contribución sobre ingresos para el año 1947. Esta deficiencia se determinó aumentando el ingreso neto declarado de $9,496.88 a $252,284.38. Este ingreso provenía de ingresos no declarados (dividendos) por $223,518.11 y otras cuatro partidas que detallaremos en el curso de esta opinión.

Los contribuyentes solicitaron reconsideración y vista administrativa pero antes de que hiciera su determinación final, el Tesorero les hizo otra notificación preliminar de deficiencia en noviembre 20 de 1951 aumentando el ingreso neto sujeto a contribución a $598,726.04. Dicho ingreso se determinó tomando como base el ingreso neto imputado en la notificación de 11 de octubre de 1950 y adicionándole una partida de $349,641.66 en concepto de participación en ganancias como resultado de permutas de acciones.

Los contribuyentes nuevamente solicitaron reconsideración y obtuvieron una vista administrativa, luego de lo cual el Secretario de Hacienda notificó a los contribuyentes en julio 20 de 1953 su determinación final de deficiencia reajustando el ingreso neto sujeto a contribución a la suma de

---

[1] Estos contribuyentes estuvieron casados entre sí hasta agosto de 1947, cuando por sentencia de divorcio por la causal de separación por más de tres años, quedó disuelto el vínculo matrimonial existente entre ellos.

$389,119.61. Este ingreso fue dividido entre ambos contribuyentes y se computó la contribución separadamente a cada uno.

Para revisar esta determinación final del Secretario de Hacienda los contribuyentes acudieron al Tribunal Superior radicando sendas demandas en agosto 18 de 1953. Luego de un incidente sobre la suficiencia de las fianzas prestadas por los demandantes, se hicieron varios señalamientos de los casos hasta que finalmente en la vista señalada para el día 15 de noviembre de 1955, los demandantes plantearon dos cuestiones previas de derecho, la primera de las cuales culminó en las resoluciones que motivan el presente recurso. Mediante dicho planteamiento los demandantes impugnaron la jurisdicción del Tribunal Superior por el fundamento de que la notificación de julio 20 de 1953, era una notificación preliminar de deficiencia y no la determinación final del Secretario de Hacienda.

Se recibió prueba sobre las cuestiones previas suscitadas por dichos demandantes y posteriormente el Tribunal de instancia dictó una resolución en cada caso declarándose sin jurisdicción luego de determinar que la notificación de julio 20 de 1953 era una notificación preliminar de deficiencia.

Apeló el Secretario de Hacienda y en su alegato imputa al tribunal sentenciador la comisión de los siguientes errores:

"Primer Error: Erró el Tribunal Superior al concluir que el Secretario de Hacienda consideró en la notificación de deficiencia de julio 20 de 1953 partidas no consideradas antes.

"Segundo Error: Erró el Tribunal Superior al resolver que el Secretario de Hacienda no hizo una notificación definitiva al contribuyente en el presente caso.

"Tercer Error: Erró el Tribunal Superior al declararse sin jurisdicción en el presente caso."

Los demandantes-apelados han solicitado la desestimación de estos recursos (1) porque el recurso de apelación puede ser promovido únicamente a instancia de partes agraviadas por la resolución o sentencia objeto del recurso y en

estos casos no es parte agraviada el Secretario de Hacienda por las resoluciones del Tribunal Superior declarándose sin jurisdicción para entender en demandas radicadas en su contra, y (2) porque las resoluciones en cuestión no constituyen adjudicaciones en los méritos de las deficiencias contributivas en controversia ni tampoco constituyen sentencias finales o providencias interlocutorias que sean apelables bajo la ley en vigor al tiempo de tramitarse estos recursos de apelación.

Argumentan los apelados que los recursos de apelación que nos ocupan están cubiertos por las disposiciones del Código de Enjuiciamiento Civil, hoy derogado, ya que se tramitaron antes de aprobarse las nuevas Reglas de Procedimiento Civil y que de conformidad con el Art. 294 de dicho Código(²) el recurso de apelación se da solamente a favor de la parte agraviada por la resolución o sentencia que es objeto del mismo, no siendo el Secretario de Hacienda tal parte agraviada toda vez que las demandas incoadas en su contra fueron desestimadas por falta de jurisdicción. Argumentan además, que la Sección 57(a)9 de la Ley de Contribuciones sobre Ingresos de 1924, que es la ley aplicable, disponía que las sentencias finales del Tribunal Superior "dictadas en los méritos de la deficiencia podrán ser apeladas en la forma y dentro del término provistos por ley para apelar al Tribunal Supremo las sentencias finales del Tribunal Superior, con sujeción, además, a los requisitos adicionales impuestos por la Sec. 816 de este título . . ."; que las resoluciones objeto de apelación no constituyen sentencias finales en los méritos de las deficiencias porque el Tribunal Superior lo que hizo fue limitarse a declarar que no tenía jurisdicción para intervenir en la consideración de las alegadas deficiencias.

---

(²) El referido Art. 294 disponía:

"Cualquier parte agraviada por una resolución judicial podrá apelar en los casos previstos en este Código. La parte que interpone la apelación se llama apelante, y la contraria, apelada."

Para la interpretación de este artículo, véanse *Freire* v. *Quintero*, 23 D.P.R. 128; *Diego Agüeros & Cía.* v. *Navarrete*, 36 D.P.R. 875; *Díaz* v. *Barceló*, 27 D.P.R. 312; *Pérez* v. *Torres*, 79 D.P.R. 611.

Argumentan además los apelados que la Ley de Contribuciones sobre Ingresos de 1924 contiene disposiciones específicas que determinan la acción a seguir cuando el Tribunal Superior se declara sin jurisdicción para conocer de recursos radicados por el contribuyente contra determinaciones de deficiencia y al efecto citan la Sec. 57(a)8 preceptiva de que las decisiones del Tribunal Superior negándose a conocer de un asunto por haber dejado el contribuyente de cumplir con los requisitos de ley para obtener su revisión serán inapelables, "pero cualquier parte afectada podrá, dentro de diez días a partir de la fecha en que fuera notificada de dicha decisión, solicitar revisión de la misma por el Tribunal Supremo mediante recurso de certiorari".

Refiriéndose a este precepto dicen los apelados: "Esta disposición es inaplicable en los casos de autos ya que aquí la negativa del Tribunal Superior a conocer de las demandas incoadas por los apelados no se basa en el fundamento de que el contribuyente haya dejado de cumplir requisito alguno sino en que las notificaciones de deficiencia no tienen el carácter de finales y por tanto no son revisables judicialmente. Pero en caso de que por analogía se considere dicha Sección 57(a)8 como de aplicación, entonces resultaría que las resoluciones del tribunal a quo son inapelables por disposición expresa de dicha sección ya que no se solicitó su revisión dentro del procedimiento ni dentro del término dispuesto por dicha sección."

Para el 16 de noviembre de 1956, fecha de las resoluciones apeladas, ya había prescrito el término legal que tenía el Secretario de Hacienda para tasar e imponer las contribuciones envueltas en estos litigios.

El efecto de las susodichas resoluciones era el de anular el carácter de notificaciones finales de deficiencia que el Secretario de Hacienda y aun los apelados, entendieron que tenían las notificaciones de 20 de julio de 1953. Difícil-

mente puede convenirse con el criterio de que estas resoluciones no afectaban adversamente al apelante por la razón técnica de que las demandas fueron desestimadas y que por lo tanto el demandado no era una parte agraviada. Pero si las ameritadas resoluciones no eran apelables por los fundamentos aducidos por los apelados o si no eran revisables bajo la Sec. 57(a)8 porque la decisión de falta de jurisdicción no la basó el tribunal a quo en haber los contribuyentes dejado de cumplir con los requisitos de ley para obtener su revisión, podemos y debemos considerar las apelaciones como recursos de *certiorari*, concediéndole así a la parte apelante un remedio para discutir ante este Tribunal la determinación hecha por el tribunal sentenciador sobre la naturaleza o carácter de las notificaciones de deficiencia de 20 de julio de 1953. *Cf. Viera* v. *Comisión Hípica*, 81 D.P.R. 707; *Concepción* v. *Junta de Contabilidad*, 80 D.P.R. 194.

Para mejor comprensión del problema envuelto en este caso precisa hacer un breve resumen de las transacciones que dieron origen a las notificaciones de deficiencia en litigio.

■ Rafael Ramos Cobián y Rita María Santiago estuvieron casados hasta el 14 de agosto de 1947. La sociedad legal de gananciales por ellos constituida era dueña del 99 por ciento de las acciones de la corporación Cobián Theatres, Inc., la cual se dedicaba a negocios (películas, teatros, cines) en Puerto Rico y la República Dominicana. Con el propósito de reorganizar los negocios de esta corporación, según reza una resolución de su Junta de Accionistas, se organizaron dos corporaciones: "Cobián Theatres of Puerto Rico, Inc." y "National Pictures Corporation". En 14 de enero de 1947, Cobián Theatres, Inc. acordó traspasar todo su activo y pasivo en permuta por acciones a las dos nuevas corporaciones antes mencionadas. En dicha fecha Cobián Theatres, Inc., traspasó a National Pictures Corporation parte de su activo, que se describe como "películas, Oficina Santo

Domingo y Mobiliario" a cambio de acciones de National Pictures Corporation que a su vez pertenecían a los accionistas de Cobián Theatres, Inc. El remanente del activo y pasivo del negocio en Puerto Rico de Cobián Theatres, Inc. fue traspasado a cambio de acciones a Cobián Theatres of Puerto Rico, Inc. Las acciones de esta nueva corporación pertenecían también a los accionistas de Cobián Theatres, Inc. y las permutadas fueron distribuidas entre los accionistas de Cobián Theatres of Puerto Rico, Inc. en la proporción correspondiente. En julio de 1947 una parte del activo y pasivo de Cobián Theatres of Puerto Rico, Inc., fue traspasado en permuta por acciones a una corporación de reciente creación, organizada por los mismos organizadores de Cobián Theatres of Puerto Rico, denominada Puerto Rico Amusement Corporation. En agosto de 1947 se dictó sentencia de divorcio disolviendo el vínculo matrimonial entre Ramos Cobián y Rita María Santiago. En 12 de noviembre de 1947 se elevaron a escrituras públicas y se ratificaron las transacciones anteriormente mencionadas entre Cobián Theatres, Inc., National Pictures Corporation, Cobián Theatres of Puerto Rico, Inc. y Puerto Rico Amusement Corporation. Por escritura pública de primero de diciembre de 1947 se liquidó la sociedad de gananciales entre Ramos Cobián y Rita María Santiago, adjudicándose a ésta, como pago parcial de su haber ganancial, la totalidad de las acciones de la Puerto Rico Amusement Corporation.

Examinemos ahora las notificaciones de deficiencia. En la de octubre 11 de 1950 se hizo el ajuste al ingreso neto según se copia a continuación:

## "Ajuste al Ingreso Neto

"Ingreso neto según declaración      $9,496.88
"Ingreso neto según investigación      252,284.38
"Ajuste al ingreso neto según se computa a continuación      $242,787.50

"Ingresos a aumentar y deducciones a rebajar:

"1—Ingresos no declarados (dividendos)      $223,518.11
"2—Ingresos no declarados (otros)      3,060.07
"3—Beneficio en venta de finca      10,000.00
"4—Pérdida Circuito Cobián—Ponce      8,709.32
"5—Pérdida en venta de acciones      2,500.00

"Total      $247,787.50

"Ingresos a rebajar y deducciones a aumentar:
"6—Beneficio en venta de casa      $5,000.00

"Total      5,000.00

"Ajuste al ingreso neto (igual al anterior)      $242,787.50"

La propia notificación contiene una explicación de las partidas alteradas. La partida Núm. 1—Ingreso no declarado (dividendos)—$223,518.11 representa la participación en el Dividendo distribuido por Cobians Theatres of Puerto Rico, Inc., a virtud de reorganización efectuada, en noviembre 12 de 1947. La partida Núm. 2, que comprende otros ingresos no declarados por $3,060.00, corresponden a rentas no declaradas de una casa adquirida en septiembre de 1947, y luz y fuerza eléctrica, agua, alcantarillado y reparación de residencia asumidos por Cobián Theatres of Puerto Rico, Inc. que constituyen una compensación para la contribuyente.

La partida Núm. 3 es la determinación de una ganancia de $20,000 y no de $10,000 según se informó en la planilla, en la venta de dos fincas realizadas en agosto de 1947.

La partida Núm. 4 titulada "Pérdida Circuito Cobián —Ponce—$8,709.32" corresponde al valor de piezas de repuesto no usadas, que no constituyen un gasto del año.

La partida Núm. 5 que se refiere a una pérdida de $2,500 en venta de acciones, no es una pérdida deducible. En la partida Núm. 6 se rebaja del ingreso $5,000.00 declarado como beneficio en venta de casa porque la casa vendida no era propiedad del contribuyente.

En la notificación preliminar de deficiencia de noviembre de 1951 se determinó el ingreso neto en la siguiente forma:

"Anexo "B"—Determinación del Ingreso Neto
"Año Contributivo: 1947

| | | | |
|---|---|---|---|
| INGRESO NETO SEGUN NOTIFICACION DE 10/11/50... | ............... | ............... | $252,284.38 |
| AJUSTES SEGUN INVESTIGACION<br>MAS: Ingresos No Declarados..................<br>(Ganancia en Permuta) | ............... | ............... | 349,641.66 |
| Participación en ganancias como resultado de la permuta de acciones de Cobián Theaters, Inc., por acciones de Cobián Theaters of P. R. Inc. y acciones de National Pictures, Inc. a virtud de la reorganización efectuada en Nov. 12 de 1947. | | | |
| Valor en el Mercado en el 1947 de las acciones de:<br>Cobián Theaters of P. R. Inc................. | $459,434.86 | | |
| National Pictures, Inc........................... | 36,592.80 | $496,027.66 | |
| Base de las Acciones en Cobián Theaters, Inc... | ............... | 146,386.00 | |
| Ganancia Neta.................................... | ............... | $349,641.66 | |

## Y en la notificación final de julio 20 de 1953 se determinó el Ingreso Neto así:

"Anexo "B"—Determinación del Ingreso Neto
"Año Contributivo: 1947

| | | | |
|---|---|---|---|
| INGRESO NETO SEGUN NOTIFICACION DE 11/20/51... | ............... | ............... | $601,926.04 |
| AJUSTES SEGUN VISTA ADMINISTRATIVA:<br>Aumento al ingreso neto s/ notificación.......... | ............... | $592,429.16 | |
| Ingreso neto s/ vista:<br>Ganancia neta reorganización (1)................ | $360,353.34 | | |
| Ingresos no declarados........................ | 3,060.07 | | |
| Beneficio en venta de finca.............. | 10,000.00 | | |
| Pérdida Circuito Cobián — Ponce.............. | 8,709.32 | | |
| Pérdida en venta de acciones.................. | 2,500.00 | | |
| Total................................. | $384,622.73 | | |
| MENOS: | | | |
| Beneficio venta casa............................. | 5,000.00 | 379,622.73 | |
| INGRESO NETO A REBAJAR S / VISTA.............. | ............... | ............... | 212,806.43 |
| (1) Forma en que se determinó la ganancia neta en la reorganización de 11/12/47:<br>Sobrante libre acumulado a 11/12/47.......... | ............... | $231,107.78 | |
| Aumento en valor de propiedades............. | ............... | 87,720.74 | |
| Reserva para contingencias.................... | ............... | 41,524.82 | |
| | | $360,353.34 | |
| INGRESO NETO SEGUN VISTA ADMINISTRATIVA...... | ............... | ............... | $389,119.61 |
| "½ QUE CORRESPONDE A RITA SANTIAGO......... | ............... | ............... | $194,559.80 |
| "½ QUE CORRESPONDE A USTED.................... | ............... | ............... | $194,559.81 |

Se notará que para ajustar el ingreso neto declarado por el contribuyente, el Secretario de Hacienda en su notificación tentativa de octubre 11 de 1950, incluyó cinco partidas que aumentaban el ingreso neto declarado en $247,787.50. Del mismo se dedujo una partida de $5,000 declarado indebidamente por el contribuyente, quedando reducida la deficiencia a $242,787.50.

Luego de una ulterior investigación el Secretario de Hacienda envió a los contribuyentes la notificación tentativa de deficiencia de 20 de noviembre de 1951. Esta notificación tomó como base el ingreso neto computado a los contribuyentes en la notificación de octubre 11 de 1950; o sea, la deficiencia determinada a base de las 6 partidas explicadas en dicha notificación que produjeron el aumento de $242,787.50 en el ingreso neto más aquél que se había declarado, sumando en total a $252,284.38. Además se adicionó en esta segunda notificación una partida de $349,641.66 por participación en ganancia como resultado de la permuta de acciones de Cobián Theatres of Puerto Rico, Inc. y acciones de National Pictures, Inc., en virtud de la reorganización efectuada en noviembre 12 de 1947. Esto daba una deficiencia, después de deducir el ingreso neto declarado de $592,429.16.

Puede decirse que esta notificación de 1951 sustituye a la de octubre 11 de 1950. Sin embargo, es un hecho cierto que todas y cada una de las partidas consideradas por el Secretario de Hacienda en la notificación de octubre 11 de 1950 para reajustar el ingreso neto de los contribuyentes, quedaron incluidas en la notificación posterior de 20 de noviembre de 1951 pues la primera partida que se consigna en esta última notificación—"Ingreso neto según notificación de 10/11/50—$252,284.30" es una reiteración íntegra de la anterior notificación.

De suerte que cuando los contribuyentes solicitaron reconsideración y vista administrativa de la notificación tentativa de deficiencia de 20 de noviembre de 1951, sabían que al rea-

justarse el ingreso neto declarado, el Secretario de Hacienda había considerado todas las partidas consignadas en la notificación de octubre 11 de 1950, más la partida de $349,641.66 adicionada en dicha notificación de 20 de noviembre de 1951. Las dos partidas más importantes incluidas en esta notificación lo eran la de ingresos no declarados (dividendo) ascendentes a $223,518.11 que representaban la participación en el dividendo distribuido por Cobián Theatres of Puerto Rico, Inc., a virtud del plan de reorganización efectuado en noviembre 12 de 1947, y la otra de ingresos no declarados (ganancia en permuta), ascendente a $349,641.60 que representaba la participación en ganancias como resultado de la permuta de acciones de Cobián Theatres, Inc. por acciones de Cobián Theatres of Puerto Rico, Inc. y acciones de National Pictures, Inc. Estas dos partidas aumentaban el ingreso neto en $573,159.77. Esta suma de ingresos no declarados, eran por el concepto de 1) participación en dividendo distribuido por Cobián Theatres of Puerto Rico, Inc. a virtud de la reorganización efectuada en noviembre 12 de 1947, y 2) participación en ganancias como resultado de la permuta de acciones de Cobián Theatres, Inc. y acciones de National Pictures, Inc. también a virtud de la reorganización efectuada en noviembre 12 de 1947.

Después de celebrarse la vista administrativa, el Secretario de Hacienda notificó a los contribuyentes, en 20 de julio de 1953, su determinación final de deficiencia, En ella confirmó las cuatro partidas denominadas "Otros ingresos no declarados—$3,060.07; Beneficio en venta de finca —$10,000.00; Pérdida Circuito Cobián Ponce—$8,709.32; Pérdida en venta de acciones—$2,500 y la deducción de Beneficio venta casa—$5,000.00, que se habían incluido en notificación tentativa de 11 de octubre de 1950 y en la posterior de 20 de noviembre de 1951. En cuanto a las dos partidas por concepto de participación en el Dividendo dis-

tribuido por la Cobiáns Theatres of Puerto Rico, Inc. a virtud de la reorganización y participación en ganancias como resultado de la permuta de acciones de Cobián Theatres, Inc. por acciones de Cobián Theatres of Puerto Rico, Inc. y acciones de National Pictures, Inc. a virtud de la reorganización de la primera de estas corporaciones y que sumadas hacen el total de $592,429.16, el Secretario de Hacienda la reajustó, rebajándole la cantidad de $212,806.43 y confirmó la diferencia de $379,622.73 que se determinó sumando al sobrante libre acumulado en noviembre 12 de 1947, el aumento en valor de las propiedades y la reserva para contingencias que contribuian la ganancia neta de los contribuyentes en la reorganización efectuada en la fecha antes mencionada. Y ya hemos visto que las dos partidas principales de ingresos no declarados, llamadas "dividendos" en la notificación tentativa de 1950 y "ganancia en permuta" en la de 1951, se basaban en la reorganización de la Corporación Cobián Theatres, Inc. Fundamentalmente la notificación o determinación final de deficiencia no se basa en concepto ni hechos distintos a los consignados en las dos notificaciones tentativas tantas veces mencionadas antes.(3)

---

(3) En un memorándum de 10 de noviembre de 1952 dirigido al Negociado de Contribuciones sobre Ingresos, los contribuyentes se expresaron así: "En la vista administrativa en que se discutió la deficiencia arriba mencionada (Re: Ramos Cobián), el Negociado explicó la forma como determinó la cuantía del beneficio de $349,641.66. Dicha determinación sigue los siguientes extremos:

"*Costo o base de las acciones permutadas*

| | |
|---|---|
| "Costo de las acciones Cobián Theatres, Inc. | $145, 600. |
| "Capital pagado Cobián Theatres of Puerto Rico, Inc. | 1, 000 |
| "Capital pagado National Pictures, Inc. | 1, 000 |
| Total base | $147, 600 |

Esto hace distinguible los casos de *González Padín* v. *Tribl. de Contribuciones*, 66 D.P.R. 24 e *Irizarry* v. *Tribl. de Contribuciones*, 67 D.P.R. 953.

■ En la notificación final de deficiencia a la contribuyente Rita María Santiago, el Secretario de Hacienda incluyó por vez primera una penalidad de 25 por ciento. Se alega que esto convierte a dicha notificación en una preliminar o tentativa porque no le dio la oportunidad de discutir la procedencia o corrección de dicha penalidad ante el Secretario de Hacienda. No estamos de acuerdo.

■ El Art. 70(b) de la Ley de Contribuciones sobre Ingresos, antes de ser enmendada por la Ley Núm. 167 de 3 de mayo de 1949, disponía:

"(*b*) El Tesorero determinará e impondrá todas las contribuciones por las cuales así se hicieren las declaraciones o listas de acuerdo con esta sección. En caso de no hacerse y presentarse una declaración o lista dentro de la fecha prescrita por la ley, o por el Tesorero de acuerdo con la ley, éste agregará a la contribución el 25 por ciento de su importe, excepto que cuando una declaración se presentare después de dicha fecha y se demostrare que la falta se debió a una causa razonable y

*"Valor en el mercado de acciones de Cobián Theatres of Puerto Rico, Inc.*

| | |
|---|---:|
| "Equidad neta | $332,107.78 |
| "Reservas Capitalizadas | 41,524.82 |
| "Aumento en valor de las propiedades | 87,720.74 |
| "Total Cobián Theatres of Puerto Rico, Inc. | $461,353.34 |
| "Acciones de National Pictures, Inc. | 37,000.00 |
| Total | $498,353.34 |
| "Menos costo (o base) | 147,600.00 |
| *"Beneficio neto* | $350,753.34" |

Se ve pues que los conceptos y las partidas discutidas y confirmadas en parte por la notificación final de 20 de julio de 1953, son los mismos que se consignan en la notificación preliminar de deficiencias. La teoría de los contribuyentes era que se trataba de una reorganización no tributable y siempre impugnaron la base o costo de las acciones de las corporaciones Cobián Theatres, Inc. y las de los contribuyentes.

no a negligencia voluntaria, no se agregará nada a la contribución. En caso de que voluntariamente se hiciere una declaración o lista falsa o fraudulenta, el Tesorero agregará a la contribución el 50 por ciento de su importe." (73 D.P.R. 548.)

En *Comunidad Fajardo* v. *Tribl. Contribuciones,* 73 D.P.R. 543, dijimos a la página 549 que esta disposición excusa la radicación tardía, por causa razonable, pero no el dejar totalmente de radicar la planilla y agregamos "Por tanto estamos constreñidos a resolver que la penalidad de 25 por ciento recae en forma automática al demostrarse meramente, como ocurre aquí, que el contribuyente en ningún momento radicó su planilla".

Una vez que el Secretario de Hacienda reajustó el ingreso neto tributable de la contribuyente y computó la contribución correspondiente sobre dicho ingreso, venía obligado por ley, por razón de no haber ella radicado planilla, agregar a dicha contribución la penalidad del 25 por ciento y a cobrarla en la misma forma que la contribución. Si la contribuyente no venía obligada a pagar la contribución así tasada ni a rendir planilla es cuestión que no nos compete resolver ahora.

■ Finalmente diremos que el Secretario de Hacienda, a nuestro juicio, no cambió su teoría en cuanto a si se trataba de un solo contribuyente o de dos contribuyentes. Tanto en las notificaciones tentativas como en la final de deficiencia se tasó e impuso la contribución a cada uno de los contribuyentes por separado.

*En vista de todo lo relacionado anteriormente concluimos que el Tribunal Superior cometió error al declararse sin jurisdicción. En su consecuencia las resoluciones que motivan estos recursos serán anuladas y los casos devueltos a dicho tribunal para ulteriores procedimientos.*