DEOGRACIAS VIERA SOSA, peticionario y recurrido, *v.* COMISIÓN HÍPICA DE PUERTO RICO, recurrida, y SAN JUAN RACING ASSOCIATION, interventora y recurrente.

Número 12431.

*Sometido:* 4 de abril de 1960. *Resuelto:* 9 de mayo de 1960.

*Córdova & González* y *Alberto Picó,* abogados de la recurrente;
*Abraham Díaz González,* abogado del peticionario, recurrido;

*Germán Rieckehoff Sampayo,* abogado de la Comisión Hípica, recurrida.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

El día 30 de junio de 1954 la Comisión Hípica de Puerto Rico concedió a la San Juan Racing Association, Inc., una licencia para la explotación de un hipódromo, con carácter exclusivo, por el término de diez años. De ahí que al expedir una licencia al Sr. Deogracias Viera Sosa para operar el Hipódromo Quintana durante el año de 1956, la Comisión Hípica le impuso la siguiente condición: "Esta licencia será efectiva durante el año natural de 1956; DISPONIÉNDOSE, que si durante dicho término el nuevo hipódromo El Comandante estuviese listo para comenzar sus operaciones, la misma expirará automáticamente, según lo dispuesto en el Apartado 6 de la Sección Cuarta Sobre Licencias del Reglamento Hípico vigente." Algún tiempo después, el 18 de mayo de 1956, Deogracias Viera Sosa radicó una petición ante la Comisión Hípica en la que impugnó la susodicha condición. Alegó que, con arreglo a la Ley Hípica de Puerto Rico (15 L.P.R.A. secs. 181–193) y a sus propios reglamentos, la Comisión carecía de facultad para (1) conceder una licencia exclusiva por el término de diez años para la explotación del juego de hipódromo; y (2) condicionar la licencia expedida para la operación del Hipódromo Quintana durante el año 1956 de suerte que la misma expiraba automáticamente ". . . si durante dicho término el nuevo hipódromo El Comandante estuviese listo para comenzar sus operaciones..." Este caso fue consolidado, a los fines de vista y decisión, con otro procedimiento que se inició el 27 de septiembre de 1956 en virtud de una orden que dictó la Comisión Hípica para que Deogracias Viera Sosa compareciera ". . . a mostrar causa por la cual no deba dársele plena fuerza y vigor a la condición impuesta a su licencia . . . al efecto de que la misma quedará cancelada tan pronto comience a funcionar el nuevo hipódromo." Seguido el juicio administrativo por todos sus trámites, el 24 de mayo de 1957

la Comisión Hípica dictó una decisión en la que (1) declaró sin lugar la petición que presentó Deogracias Viera Sosa el 18 de mayo de 1956; y (2) resolvió que no procedía expedir una nueva licencia a Deogracias Viera Sosa para operar el Hipódromo Quintana durante el año 1957. [1]

Como veremos de inmediato, sirven y bastan para sostener esa decisión los hechos que la Comisión Hípica estimó probados, al determinar que el Hipódromo Quintana estaba en condiciones deplorables, que era completamente inadecuado para el deporte hípico y que no podía ser reconstruido, ampliado o mejorado, debido a las restricciones impuestas por los Reglamentos de Zonificación vigentes. Por otro lado, las conclusiones a que llegó la Comisión Hípica sobre esos hechos fundamentales están ampliamente sostenidas por la prueba practicada durante las vistas administrativas. La dificultad estriba en que la Comisión Hípica, a manera de *dictum*, adujo en su opinión otros "fundamentos" adicionales e innecesarios en apoyo de su decisión. Declaró entre otras cosas: (1) que Deogracias Viera Sosa estaba impedido por su propia conducta, aplicando las doctrinas de "renuncia" (waiver), "incuria" (laches) y "actos propios" (estoppel), de plantear cualquier impugnación a la licencia exclusiva que se concedió a la San Juan Racing Association para operar un hipódromo por el plazo de diez años; (2) que la Comisión Hípica tenía facultad en ley para conceder una licencia con carácter exclusivo para la explotación de un hipódromo; y (3) que no mediaron irregularidades en la expedición de la licencia para operar El Comandante que ameritaran la intervención de la

---

[1] Se hizo constar que cuando se expidió la orden para mostrar causa, existía la posibilidad de que el nuevo hipódromo se inaugurara antes de expirar el año 1956, para el cual Viera Sosa tenía licencia "sujeta a cancelación tan pronto comenzara a funcionar el nuevo hipódromo". Sin embargo, como Viera operó bajo su licencia durante todo el año 1956, antes de resolverse la cuestión suscitada bajo la orden para mostrar causa, ". . . la condición impuesta a su licencia vino a ser académica y lo único que resta por considerar es si procede la expedición de una nueva licencia . . . para el año 1957."

Comisión, afectaran la licencia de la San Juan Racing Association o justificaran la cancelación de la misma.

Cumplido el trámite de reconsideración que impone la ley, Deogracias Viera Sosa acudió mediante certiorari al Tribunal Superior, Sala de San Juan. Véase 15 L.P.R.A. sec. 188. Solicitó que se anulara la decisión de la Comisión Hípica de 24 de mayo de 1957; que se declarara que la Comisión no tiene facultad en ley para expedir una licencia con carácter exclusivo para la operación de un hipódromo ni para condicionar las licencias de Deogracias Viera a las operaciones del Hipódromo El Comandante; y por último, que se ordenara a la Comisión expedirle una licencia condicional para la operación de un hipódromo, sujeta a requisitos razonables, en tanto él construía otro nuevo. Alegó para ello que la Comisión Hípica incidió en los siguientes errores:

"I...al resolver que el peticionario está impedido de cuestionar el poder de la Comisión Hípica para conceder una licencia para la explotación de un hipódromo con carácter exclusivo por el término de (10) años a la San Juan Racing Association, Inc.

"II . . . al resolver que el peticionario está impedido de cuestionar el poder de la Comisión Hípica para condicionar, en la forma que lo hizo, la licencia para operar su hipódromo durante el año 1956.

"III . . . al resolver que tiene facultad para conceder una licencia para la explotación de un hipódromo con carácter exclusivo por el término de diez (10) años.

"IV . . . al apoyar su actuación administrativa en resoluciones y actas aprobadas en ausencia del peticionario y las cuales no les fueron oportunamente notificadas.

"V . . . al denegar la solicitud de renovación de licencia del peticionario para operar su Hipódromo Quintana durante el año 1957, a pesar de la reiterada disposición del peticionario de cumplir con los requisitos que establezca dicha Comisión para extenderle una licencia provisional para operar su hipódromo durante el tiempo que se le conceda para construir otro, de acuerdo con los requisitos que fije la Comisión y a tenor con lo dispuesto en la Ley Hípica de Puerto Rico; 15 L.P.R.A., sec. 184 (5).

"VI . . . al actuar en forma apasionada, prejuiciada y teñida de parcialidad."

Ante el Tribunal Superior compareció como interventora la San Juan Racing Association, Inc., quien había participado anteriormente como "parte opositora" en todo el trámite administrativo del caso. El recurso quedó sometido definitivamente por las partes a base del récord completo de todos los procedimientos habidos ante la Comisión Hípica, que contenía la prueba documental y la evidencia oral allí ofrecida y admitida. Finalmente, con fecha 20 de noviembre de 1957 (y luego, en reconsideración, con fecha 11 de diciembre de 1957) el Tribunal Superior resolvió en síntesis: (1) que Deogracias Viera Sosa no estaba impedido de impugnar la facultad de la Comisión Hípica para conceder a la San Juan Racing Association una licencia exclusiva a fin de explotar un hipódromo por el término de diez años; (2) que la Comisión Hípica no tiene facultad en ley para conceder una licencia exclusiva para la operación de un hipódromo; (3) que toda la evidencia que consta en el récord de las vistas administrativas era en ley admisible y que todas las conclusiones a que llegó la Comisión Hípica sobre hechos pertinentes a la controversia están ampliamente sostenidas por la prueba, especialmente las que se refieren a las condiciones inadecuadas y deplorables del Hipódromo Quintana; (4) que la Comisión Hípica nunca estuvo en condiciones de juzgar y determinar si Deogracias Viera Sosa tenía derecho a que se le concediera una licencia provisional para operar su hipódromo durante el tiempo que se le otorgara para construir otro hipódromo nuevo, ya que esa cuestión nunca fue debidamente planteada a la Comisión Hípica en el curso de los procedimientos administrativos; (5) que la Comisión Hípica ". . . tuvo ante sí suficiente evidencia para llegar a las conclusiones de hecho conducentes a la adjudicación hecha en su resolución de 24 de mayo de 1957"; y (6) que la Comisión Hípica no actuó con pasión, prejuicio y parcialidad al resolver el caso. En la parte dispositiva de su sentencia el Tribunal Superior dictaminó como sigue: *"Ninguno de los errores cometidos es sufi-*

*ciente para revocar la resolución de 24 de mayo de 1957, por
lo que se confirma la misma."* (Bastardillas nuestras.)

█ Contra esa sentencia de instancia la interventora
San Juan Racing Association interpuso un recurso de apela-
ción con fecha 3 de enero de 1958. Siete meses más tarde,
luego de haberse perfeccionado la apelación ante nos y de
haberse radicado los alegatos de ambas partes, Viera Sosa
solicitó la desestimación del recurso a base de la doctrina
sentada en *Concepción* v. *Junta de Contabilidad,* 80 D.P.R.
194 (1958). Señaló con razón que, a tenor de la sec. 14 de
la Ley de la Judicatura de 1952 (4 L.P.R.A. sec. 37), era
inapelable la sentencia dictada por el Tribunal Superior en el
caso de autos. No obstante, en vista de que ya la apelación
había sido debidamente fundamentada, la interventora solicitó
que se considerara el recurso como si se tratase de una peti-
ción de certiorari, sin que a ello se opusiera la parte contraria.
Por eso, mediante Resolución dictada el 31 de octubre de 1958,
este Tribunal desestimó la apelación y resolvió seguir cono-
ciendo del caso como un recurso de certiorari.([2])

██ Ahora bien, ¿cuáles son los motivos de impugnación
en que funda su recurso la interventora? Se alega que " . . . la
sentencia apelada revoca, aunque pretende confirmar, la deci-
sión de la Comisión Hípica de 24 de mayo de 1957 en tanto en
cuanto dicha decisión denegó la petición de Viera Sosa de
mayo 18 de 1956." En consecuencia, partiendo de ese su-
puesto, deduce la interventora que el Tribunal Superior inci-
dió en error al resolver (1) que Viera Sosa no está impedido
de atacar la validez de la licencia de la San Juan Racing

---

([2]) Al desestimar por falta de jurisdicción la apelación interpuesta en
el caso de *Concepción,* hicimos la salvedad de que ". . . esto no afecta el de-
recho que [el apelante] tiene de presentar ante nos una petición de *certio-
rari* debidamente fundamentada". Obsérvese que allí también se señaló
lo siguiente: "No podríamos considerar ahora el caso como si se tratase
de una petición de *certiorari.* En efecto, el apelante todavía no ha pre-
sentado el alegato que exige nuestro reglamento (4 L.P.R.A. Ap. I R. 10).
No sabemos qué errores imputa al tribunal inferior ni qué fundamentos
tendría para solicitar la revisión mediante *certiorari."* Supra, pág. 196.

Association; y (2) que dicha licencia exclusiva por el plazo de diez años resulta inválida por carecer la Comisión Hípica de facultad en ley para concederla. Aunque en su alegato discute ambas cuestiones en sus méritos, señala también que

". . . erró el Tribunal Superior al pretender resolver un asunto que, por ser académico, no podía ni debía ser objeto de resolución judicial en este caso, a saber, la validez de la licencia de la San Juan Racing Association." No sólo esto. Al final de su alegato la interventora se limita a pedir que este Tribunal modifique la sentencia de instancia ". . . eliminando de ella aquellos pronunciamientos que pretenden modificar la decisión de la Comisión Hípica de mayo 24 de 1957 . . .".

Por su parte, Viera Sosa sostiene ante nos que los dos pronunciamientos del Tribunal Superior, impugnados aquí por la interventora, son correctos y deben ser confirmados. Afirma que ". . . las cuestiones objeto de la [sentencia recurrida] son de gran interés público en tanto en cuanto plantean actuaciones . . . realizadas en violación de la ley que afectan vitalmente el interés del peticionario en participar en el negocio de hipódromos en Puerto Rico . . ." Añade que ". . . en estos precisos momentos está pendiente de determinación una solicitud del peticionario para construir un nuevo hipódromo y la misma no será resuelta por la [Comisión Hípica] hasta tanto no se conozca la resolución del Tribunal Supremo sobre la validez de la disposición de exclusividad contenida en la licencia expedida a la interventora . . .". Por eso solicita con urgencia que resolvamos en sus méritos las cuestiones propuestas por la interventora como base de este recurso.

Creemos que es forzoso desestimar el recurso sin considerar los méritos ni resolver en su fondo los planteamientos que han formulado las partes. A esa conclusión habrá que llegar si se analizan dos puntos: *primero*, lo que en realidad resolvió y adjudicó la Comisión Hípica en su decisión de 24 de mayo de 1957; y *segundo*, el verdadero alcance de la sentencia del tribunal de instancia que es objeto del presente recurso, de-

jando a un lado los pronunciamientos innecesarios que se consignaron en la opinión que le sirve de base.

Ante la Comisión Hípica la controversia en el caso de autos quedó limitada, bajo la orden para mostrar causa, a la única cuestión de si procedía expedir a Deogracias Viera Sosa una nueva licencia para operar el Hipódromo Quintana durante el año 1957. Dicha cuestión fue resuelta por la Comisión en forma adversa a Deogracias Viera Sosa, fundándose en las siguientes conclusiones de hecho: "La prueba ofrecida y las inspecciones oculares hechas por la Comisión confirmaron en esencia lo que ya había determinado años antes la Comisión, lo que había indicado el informe de la Comisión de Gobierno Estatal y Municipal del Senado de Puerto Rico del primero de abril de 1953, lo que había reiterado la Comisión de Orden Público del Senado en sus informes de abril 14 y 6 de octubre de 1954, lo que implícitamente admitió el peticionario en su declaración ante la Comisión de Orden Público del Senado en marzo de 1953: que el hipódromo del peticionario es inadecuado. Es inadecuado en cuanto a su capacidad y comodidades para espectadores. La sección de campos no tiene pasillos para facilitar el movimiento del público. Llena a capacidad, sin deducir espacio alguno para pasillos, sienta 2,394 personas. La sección de *grandstand* podría sentar hasta 871 personas, sin pasillos. La sección de lunetas tiene capacidad para sentar 592 personas. En la sección de campo pueden colocarse algunos centenares de personas de pie, pero en las otras no hay espacio sustancial para personas de pie. Es particularmente inadecuada la capacidad del hipódromo en las secciones de grandstand y lunetas. Es inadecuado el hipódromo en cuanto a sus instalaciones sanitarias en las tres secciones. Dichas instalaciones son inadecuadas en cantidad, y pobres en calidad. Es inadecuado el hipódromo en cuanto a las instalaciones de cantina. Es inadecuado el hipódromo en cuanto a las instalaciones para las jugadas de bancas y para informar las mismas al público, instalaciones que son primitivas. Es inadecuado el hipódromo en cuanto a las ins-

talaciones para jinetes, que son pobrísimas. El edificio del *pool*, vetusta construcción de madera techada de zinc, está en malas condiciones. Las facilidades de acceso en las inmediaciones del hipódromo, así como las facilidades para estacionamiento de automóviles, son inadecuadas. La caseta del jurado, colocada al frente del grandstand, estorba la vista de parte de la pista a parte del público. En conjunto, el hipódromo no ofrece ni el aspecto ni las comodidades que debe ofrecer un hipódromo hoy día en Puerto Rico. Los reglamentos de zonificación de la Junta de Planes de Puerto Rico prohiben al peticionario hacer mejoras en su planta física, por estar ubicado el hipódromo en una zona que no es propia para hipódromos." Como consecuencia de ello, la Comisión explícitamente consignó en su decisión: "Enteramente aparte de la validez de la licencia de la San Juan Racing Association, Inc., no procede expedir licencia al peticionario para el año 1957 porque su hipódromo es completamente inadecuado, y aunque estuviere dispuesto a reconstruirlo, ampliarlo o mejorarlo, ello no es permisible dentro de la reglamentación de zonificación existente.

"Hasta ahora, y a pesar de lo inadecuado del hipódromo Quintana, se le venía concediendo licencia por no haber uno adecuado en Puerto Rico, y porque hubiese sido perjudicial al deporte hípico el suspender totalmente las carreras de caballos hasta que se pudiera construir un hipódromo adecuado. Hoy día, que existe un hipódromo moderno y adecuado, es completamente improcedente el autorizar carreras en un hipódromo inadecuado. No hay justificación alguna para obligar al público, si desea ver carreras, a someterse a las incomodidades y limitaciones del hipódromo del peticionario, cuando hay otro disponible que no tiene esas incomodidades y limitaciones. El paso de adelanto que ha dado el deporte hípico de Puerto Rico con el nuevo hipódromo, y las posibilidades de adelantos ulteriores que brinda el nuevo hipódromo, no pueden ni deben anularse, como se anularían, si se concediera al peti-

cionario el privilegio de operar un hipódromo que hace años dejó de merecer tal privilegio."

Todas las conclusiones que se acaban de copiar a la letra porque constituyen la médula del caso, están plenamente sostenidas por la evidencia que consta en los autos del procedimiento administrativo. Así lo declaró el Tribunal Superior en la sentencia recurrida: "Las conclusiones a que llegó la Comisión sobre hechos pertinentes a la controversia están ampliamente sostenidas por la prueba. Especialmente las conclusiones ... en relación con las condiciones del hipódromo de [Viera Sosa]. Un simple examen de las fotografías ofrecidas por la interventora y la declaración del propio [Viera Sosa], sostiene todas y cada unas de las conclusiones de hecho a que llegó la Comisión en cuanto a la capacidad de la planta física y sus deplorables condiciones." Ese criterio del magistrado de instancia ha quedado confirmado por el análisis detenido que hemos llevado a cabo de toda la prueba practicada ante la Comisión. Nos encontramos, pues, con la siguiente situación: al momento en que la Comisión Hípica dicta su decisión en el caso de autos (a) la licencia de Viera Sosa para operar el Hipódromo Quintana durante el 1956 ya había expirado; y (b) no procedía expedir a Viera Sosa una nueva licencia para operar el Hipódromo Quintana durante el año 1957.

Esto explica por qué la Comisión Hípica también tenía que declarar sin lugar la petición que presentó Viera Sosa el 18 de mayo de 1956, impugnando la validez de la condición impuesta a su licencia para operar el Hipódromo Quintana durante el año de 1956. Como ya señalamos antes, la condición aludida disponía que la licencia para 1956 " ... expirará automáticamente ... si durante dicho término el nuevo hipódromo El Comandante estuviese listo para comenzar sus operaciones ..." No cabe duda que el 18 de mayo de 1956 Viera Sosa tenía capacidad o personalidad (*standing*) para impugnar la validez de dicha condición impuesta a su licencia que perjudicaba y afectaba adversamente sus legítimos intereses.

Obviamente para resolver si dicha condición era válida la Comisión hubiese tenido que determinar si, con arreglo a la Ley Hípica y a sus propios reglamentos, tenía facultad para conceder a la San Juan Racing Association una licencia exclusiva por el término de diez años para la explotación de un hipódromo. Asimismo, en ausencia de los hechos fundamentales que estimó probados, la Comisión hubiese tenido que resolver esas cuestiones a fin de decidir si procedía expedirle una nueva licencia a Viera Sosa para operar el Hipódromo Quintana durante el año 1957. Sin embargo, podemos ver con sobrada claridad que esa no fue la situación que tuvo ante sí la Comisión Hípica al dictar su decisión en el caso de autos. Viera Sosa operó el Hipódromo Quintana bajo su licencia durante todo el año 1956 y la condición impuesta a la misma también expiró por el simple transcurso del tiempo. Además, debido a las condiciones deplorables e inadecuadas del Hipódromo Quintana, no procedía expedirle a Viera Sosa una nueva licencia para operar su hipódromo durante el año 1957. Así, reduciendo el asunto a su última cifra, Viera Sosa había perdido su capacidad o personalidad (*standing*) para impugnar la licencia concedida a la San Juan Racing Association. El mero interés general de Viera Sosa en el deporte hípico o su intención de solicitar en otro procedimiento distinto y separado una licencia para construir un nuevo hipódromo, no le convertía en una parte perjudicada, agraviada o afectada adversamente por la concesión a otra persona de una licencia exclusiva para explotar un hipódromo. Cf. *Perkins* v. *Lukens Steel Co.*, 310 U.S. 113 (1940). No existe en Puerto Rico ninguna disposición de ley que autorice a Viera Sosa a vindicar el interés público que pueda existir en este caso. Todo lo contrario: para tener capacidad o personalidad en un procedimiento administrativo o judicial, es imprescindible que el litigante demuestre una lesión o perjuicio a su interés individual, real y concreto. Cf. *E.L.A.* v. *Aguayo*, 80 D.P.R. 552 (1958).

Por lo demostrado antes, no cabe vacilar en calificar como *dicta* los "fundamentos" adicionales que adujo la Comisión en su decisión, a saber: (1) que Viera Sosa estaba impedido por su propia conducta, aplicando las doctrinas de "renuncia" (*waiver*), "incuria" (*laches*) y "actos propios" (*estoppel*), de plantear cualquier impugnación a la licencia exclusiva concedida a la San Juan Racing Association para operar un hipódromo por el plazo de diez años; (2) que la Comisión Hípica tenía facultad en ley para conceder tal licencia con carácter exclusivo para la explotación de un hipódromo; y (3) que no mediaron irregularidades en la expedición de la licencia para operar El Comandante que ameritaran la intervención de la Comisión, afectaran la licencia de la San Juan Racing Association, o justificaran la cancelación de la misma. Asimismo fueron innecesarios los pronunciamientos de la Sala sentenciadora al efecto de que son erróneos, como cuestión de derecho, esos "fundamentos" adicionales aducidos como *dicta* por la Comisión Hípica. Aun más: en la parte dispositiva de su sentencia, el Tribunal Superior sólo dictaminó que procedía confirmar la decisión de la Comisión Hípica de 24 de mayo de 1957. Ese resultado es correcto a base de las conclusiones de hecho de la Comisión que, como advertimos más arriba, están sostenidas por evidencia sustancial.

Ahora se entenderá lo que intentábamos sugerir cuando dijimos que es forzoso desestimar este recurso sin considerar ni resolver en su fondo las cuestiones planteadas ante nos. Carece el recurso de finalidad objetiva porque cualesquiera que sean los términos en que se resolvieran las cuestiones en él suscitadas siempre resultaría necesario confirmar la sentencia impugnada. Como se ha dicho reiteradas veces, la revisión ante este Tribunal se da contra la sentencia y no contra los fundamentos o razonamientos que le sirven de base en la opinión de la Sala de instancia. *Corrada* v. *Asamblea Municipal*, 79 D.P.R. 365, 370-71 (1956). No es posible sostener, como alega la interventora recurrente, que todas las

determinaciones de derecho contenidas en la opinión del tribunal *a quo* operarían como cosa juzgada o como impedimento colateral (*collateral estoppel*) entre las partes en cualquier pleito subsiguiente que envuelva la misma materia o transacción. Según la doctrina del impedimento colateral, cuando una cuestión de derecho *esencial* para el fallo de hecho se litiga y se adjudica mediante una sentencia final, la determinación resulta concluyente entre las mismas partes en un pleito subsiguiente basado en una causa de acción distinta, si ésta surge de la misma materia o transacción, a menos que la aplicación de la doctrina del impedimento colateral conlleve una injusticia. Véase *Restatement, Judgments* (1942) sec. 70; Scott, *Collateral Estoppel by Judgment*, 56 Harv. L. Rev. 1 (1942); y *Developments in the Law—Res Judicata*, 65 Harv. L. Rev. 818, 843–847 (1952). Pero es obvio que las determinaciones de derecho impugnadas por la interventora en este recurso no resultan esenciales ni necesarias para sostener la sentencia recurrida. Cf. *Cambria* v. *Jeffrey*, 29 N.E.2d 555 (Mass. 1940); *Schofield* v. *Rideout*, 290 N. W. 155 (Wisc. 1940) y *Karameros* v. *Luther*, 17 N.E.2d 779 (N. Y. 1938).

Además, contrario a lo que da por sentado la interventora, la sentencia del Tribunal Superior se limita a *confirmar* la decisión de la Comisión Hípica. Es errónea su contención de que ". . . la sentencia [recurrida] revoca, aunque pretende confirmar, la decisión de la Comisión Hípica de 24 de mayo de 1957 en tanto en cuanto dicha decisión denegó la petición de Viera Sosa de mayo 18 de 1956." Por tanto, la sentencia recaída fue favorable a la interventora y ésta no tenía en definitiva motivo ni fundamento para solicitar la revisión de la misma. Sentado esto, resulta obvio que las determinaciones de hecho o de derecho adversas a la interventora que hizo el Tribunal Superior con el carácter de mero *obiter dictum,* nunca podrían ser concluyentes en contra de la San Juan Racing Association. La razón es sencilla: cuando un litigante no puede solicitar ni obtener la revisión de determi-

naciones del tribunal de instancia que le son adversas, porque el fallo que se dictó a fin de cuentas resultó favorable para él, no procede aplicar en su contra la doctrina del impedimento colateral. Véase Scott, *Collateral Estoppel by Judgment*, 56 Harv.L.Rev. 116–17 (1942) y los casos allí citados.

*Debe confirmarse la sentencia recurrida y anularse el auto expedido.*

Los Jueces Asociados Sres. Belaval y Serrano Geyls no intervinieron.