JOSÉ SUÁREZ FUENTES, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. WILLIS RAMOS VÁZQUEZ, JUEZ, recurrido; SUCESIÓN DE AGAPITO LÓPEZ CASANOVAS, interventora.

*Número:* 2876     *Resuelto:* 23 de abril de 1963

---

*Víctor Gutiérrez Franqui, Federico Ramírez Ross* y *Carlos G. Látimer,* abogados del peticionario; *Ricardo R. Rivera Correa,* abogado de la interventora; *Víctor A. Coll,* abogado del *amicus curiae.*

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El día 26 de marzo de 1931, don Marcial Suárez y Suárez presentó una acción en cobro de dinero contra la Sucesión de Agapito López Casanovas compuesta de sus hijos menores de edad, Rubén, *Amelia* y *Benjamín* López Cepeda bajo la tutela de su abuela Dolores Cepeda, alegando que el 12 de marzo de 1927, el citado causante Agapito López Casanovas, reconoció deber a don Marcial Suárez y Suárez, a su vez causante del peticionario en este caso, la suma de $1,475 que se obligó a pagar con interés al uno por ciento mensual, en el plazo de tres años a partir del 12 de marzo de 1927, y para garantizar dicha deuda, don Agapito López Casanovas hipotecó a favor de don Marcial Suárez y Suárez, mediante escritura número 40 de 12 de marzo de 1927 ante el notario don Luis Sánchez Vahamonde, las siguientes propiedades: (a) rústica de diez cuerdas con doce centésimas más de cuerda en el barrio Medianía Alta del Municipio de Loíza; (b) rústica de una cuerda en el mismo barrio y además un condominio de una mitad que tenía dicho don Agapito López Casanovas en las siguientes propiedades: (1) rústica de dos cuerdas con doce centésimas en el mismo barrio de Medianía Alta; (2) rústica de dos cuerdas en el mismo barrio; (3) rústica de cincuenta centésimas de cuerda en el mismo barrio y (4) casa terrera de reciente construcción de maderas del

país y extranjeras con techo de zinc situada en la finca anteriormente descrita bajo el número 2. La otra mitad del condominio, según la propia escritura le pertenecía a los hijos de don Agapito López Casanovas, así nombrados Rubén, *Amelia* y *Benjamín* López Cepeda, habidos en su matrimonio con doña Margarita Cepeda, quien había fallecido el 13 de mayo de 1922.

El día 26 de marzo de 1931 se expidió un emplazamiento dirigido: "A la Sucesión de Agapito López Casanovas, compuesta de sus hijos menores de edad, Rubén, *Amelia* y *Benjamín* López Cepeda, bajo la tutela de su abuela Dolores Cepeda" y en el certificado de diligenciamiento por persona particular, se hace constar por el diligenciante Celedonio Ortiz, de 57 años de edad, soltero, industrial y vecino de Río Grande, Puerto Rico, la siguiente diligencia: "que a la una de la tarde del día 27 de marzo de 1931 notifiqué el mismo [el emplazamiento] personalmente a Dolores Cepeda, así como a cada uno de los menores nombrados Rubén, *Amelia* y *Benjamín* López Cepeda. . . ." Posteriormente, el mismo diligenciante notifica el embargo trabado sobre las mismas fincas hipotecadas haciendo constar: "Que procedí a notificar dicho embargo el mismo 8 de abril a las personas que se refiere dicha notificación y que son: Dolores Cepeda, Rubén, *Amelia* y *Benjamín* López Cepeda."

Es curioso observar que tanto en la descripción de la parte demandada que contiene la demanda del 26 de marzo de 1931, como en la enumeración de las personas citadas que contiene el diligenciamiento y la notificación del embargo se hace constar que los menores bajo tutela se llaman Rubén, *Amelia* y *Benjamín* López Cepeda mientras que en la resolución de declaratoria de herederos en el caso civil 20,588, dictada el 19 de marzo de 1934 por la anterior Corte de Distrito del Distrito Judicial de San Juan, de la cual es promovente el propio demandante don Marcial Suárez y Suárez, se declara herederos de Agapito López Casanovas y Margarita Cepeda y

sus hijos Rubén, *Aurelia* y *Benjamina*. Parece ser que la descripción correcta de los herederos es la que contiene la resolución de la declaratoria de herederos. Es curioso asimismo observar que en ninguna parte del trámite se hace referencia a las diligencias judiciales mediante las cuales se nombró tutora de sus nietos menores a Dolores Cepeda, lo cual robustece la alegación de la Sucesión interventora que, como cuestión de realidad, Dolores Cepeda no era tutora de los menores demandados cuando se la demanda y se la emplaza como tal tutora.

En su contestación, la Sucesión de Agapito López Casanovas, la cual comparece como "la demandada" por medio de su abogado el Lic. Luis Apellaniz Storer, negó general y específicamente todos los hechos alegados en la demanda y además alegó "que allá para el 12 de marzo de 1927 (fecha en que se otorgó la hipoteca), Agapito López Casanovas, padre de los menores que componen la Sucesión demandada no tenía la capacidad legal necesaria para efectuar contratos de ninguna clase [y] que las fincas descritas en la demanda bajo las letras (a) y (b) al igual que las demás descritas, para la fecha referida en el párrafo anterior pertenecían a Agapito López Casanovas y a sus menores hijos de común pro indiviso". Parece ser que la incapacidad del padre al momento de firmar la escritura de hipoteca era que se trataba de un enajenado mental.

En cuanto a la descripción del título adquisitivo del padre lo que aparece de la escritura número 40 de 12 de marzo de 1927 ante el notario don Luis Sánchez Vahamonde es lo siguiente: La finca de diez cuerdas con doce centésimas más de cuerda, descrita bajo la letra (a) se dice que don Agapito López Casanovas la adquirió "por compra a varias personas en esta proporción [sic] de una cuerda a doña Isabel López; cinco cuerdas a Don Lorenzo Casanovas; dos cuerdas a don Estanislao Pizarro y su esposa doña Isabel López y las doce centésimas de cuerda restante a doña Eugenia López." La

finca de una cuerda descrita bajo la letra (b) se dice que don Agapito López Casanovas la adquirió "por herencia de sus padres don Fidel López y doña Vicenta Casanovas". Es curioso observar que en la reseña del título de la finca descrita bajo la letra (a) lo mismo que las descritas bajo los números uno y dos que se admiten estas dos últimas ser gananciales, se sigue el mismo método de descripción, expresando de quiénes se adquirieron las parcelas pero sin señalar la fecha de adquisición y la única reserva del carácter privativo por herencia se hace en cuanto a la finca de una cuerda descrita bajo la letra (b). Lo cual demuestra que la segunda alegación de la contestación, en el sentido, que todas las fincas le pertenecían en común y pro indiviso al padre y a sus hijos está favorecida por la presunción de ser gananciales. Ni en la escritura de hipoteca ni en la resolución de la declaratoria de herederos, hecha a solicitud del propio don Marcial Suárez y Suárez, consta la fecha del matrimonio de don Agapito López Casanovas con doña Margarita Cepeda.

La Sucesión interventora no compareció a defenderse, y el día 23 de marzo de 1934 la anterior Corte de Distrito dictó sentencia condenando a *Rubén*, *Amelia* y *Benjamín* López Cepeda a pagarle al demandante "la cantidad de $1475.00 de principal, $708.00 de intereses devengados hasta el 4 de marzo de 1931, fecha de la demanda, y los que se devengaren hasta su definitivo pago, a razón del 1% mensual, más $150.00 estipulados para costas, gastos y honorarios de abogado".

El día 3 de octubre de 1934 se expidió orden de ejecución y el 26 de octubre de 1934 se celebró la subasta adjudicándosele al propio demandante don Marcial Suárez y Suárez la totalidad de las dos fincas descritas bajo las letras (a) y (b) y un condominio de una mitad de las fincas y edificaciones descritas bajo los números (1) (2) y (3).

Para tener un cuadro completo de los hechos es bueno dejar señalado que, según demuestran los autos, no se pudo

inscribir la hipoteca otorgada por don Agapito López Casa-
novas por no aparecer inscritas las propiedades a nombre de
éste, según nota del Registrador de la Propiedad de San Juan
de fecha 24 de diciembre de 1927. En cuanto al embargo, el
día 31 de marzo de 1931 se expidió una orden general de
embargo; el día 6 de abril de 1931 el demandante le señaló
al Alguacil todos los bienes hipotecados; el día 7 de abril de
1931 el Alguacil le dirigió al Registrador de la Propiedad
de San Juan un mandamiento, haciendo referencia a la orden
de embargo del 31 de marzo de 1931 requiriéndole anotar
el embargo en las fincas hipotecadas, cuya anotación de 14
de junio de 1932, o sea, más de un año después, dice así:
"Habiendo sido registradas las fincas (a) que este manda-
miento se refiere a nombre de Agapito López Casanovas, al
margen de las anotaciones que de este embargo se habían
practicado anteriormente, se han puesto notas, donde se indica
al margen de las precedentes descripciones, creditivas de que
tal embargo queda anotado definitivamente a favor de Mar-
cial Suárez y Suárez, sin el defecto de no estar inscritas las
fincas que se había consignado." En la finca descrita tanto
en la hipoteca como en la demanda y el mandamiento de em-
bargo bajo la letra (a) la anotación se hizo al tomo 22 folio
121 vuelto, finca número 965, nota al margen de la anota-
ción B; la descrita bajo la letra (b) al tomo 22 folio 125
vuelto, finca número 966 nota al margen de la anotación B;
la descrita bajo el número (1) al tomo 22 folio 128 vuelto,
finca número 967, nota al margen de la anotación B; la des-
crita bajo el número (2) al tomo 22 folio 131 vuelto, finca
número 968, nota al margen de la anotación B; la descrita
bajo el número (3) al tomo 22 folio 134 vuelto, finca número
968 nota al margen de la anotación B; la descrita bajo el
número (4) al tomo 22 folio 134 vuelto, finca número 968,
nota al margen de la anotación B. De los autos no consta si
esta inscripción se hizo mediante una previa inscripción de
los títulos anteriores de don Agapito López Casanovas, de un

expediente de dominio o por simple operación registral de la anotación de embargo.

Las razones por las cuales la Sucesión interventora no compareció a defenderse cuando se señaló el caso para vista, según las alegaciones de la moción contra sentencia dictada radicada por la Sucesión interventora el día 5 de abril de 1961, en el Tribunal Superior de Puerto Rico, Sala de San Juan, fueron las siguientes: "Que su abuela, con sus pocas posibilidades económicas contrató un abogado que contestó la demanda en este caso a nombre de los aquí comparecientes planteando defensas de peso como la de que Agapito López Cepeda [Casanovas] estaba incapacitado para otorgar la hipoteca [que estaba] ejecutándose, pero ni antes de contestar ella la demanda, ni durante los procedimientos, ni para la vista celebrada, se designó a los menores demandados en este caso, un tutor general o un defensor *ad litem* que los representase adecuadamente por lo que ellos nunca estuvieron ante este Honorable Tribunal [y] que enterado del paso dado por la abuela de los menores contestando la demanda, el demandante Marcial Suárez, por sí y por medio de agentes suyos, se movió cerca de la dicha abuela de los aquí comparecientes, para que no prosiguiese la defensa de sus nietos, asegurándole que si abandonaba el asunto él les dejaría siempre parte de la finca en que ubicaba la casa paterna para ellos, pero que si persistía en su defensa, los lanzaría de todas las fincas sin consideración alguna cuando ganase el caso [y] que engañada así con su promesa, y temerosa de perjudicar a sus nietos la abuela de los menores abandonó a sus nietos en la indefensión y no compareció a corte el día de la vista señalada y el Tribunal dictó la sentencia de este caso, con la sola comparecencia del demandante [y] que al obtener sentencia el demandante no sólo no cumplió su promesa a la abuela de los menores, sino que siguiendo su original propósito se apoderó de todas las fincas del caso, a pesar de que el condominio de mitad que los menores tenían

en las fincas de 2.12 cuerdas, 2.00 cuerdas con casa y media
cuerda no fueron nunca objeto de hipoteca, ni de ejecución
ni de adjudicación [y] que el demandante de ahí en adelante
mantuvo siempre a los herederos demandados de Agapito
López Casanovas bajo la impresión de que él lo había ejecu-
tado todo, y que todas las fincas le pertenecían, con exclusión
de ellos y lo más que éstos lograron de él, por conducto de un
tío suyo, cuando fueron mayores, fue que les cediese en uso
para la construcción de sus respectivas casas, media cuerda
de terreno a cada uno, en las fincas que les pertenecen de por
mitad [y] que los demandados son gentes humildes, pobres
e ignorantes y no ha sido hasta recientemente que por casuali-
dad han venido en conocimiento de (a) que ellos fueron los
demandados en este caso; (b) que se ha alegado falsamente
que se les emplazó personalmente cuando en realidad no lo
fueron; (c) que tenían derecho por ley a que se les designase
tutor general o defensor *ad litem* y no se les nombró, deján-
doseles indefensos; (d) que el demandante maniobró con
falsas simulaciones y promesas con su abuela materna para
que ésta abandonase la defensa que de sus nietos había ini-
ciado, logrando su propósito con amenazas de que lo perderían
todo si no; (e) que ellos independientemente de la sentencia
en este caso y sus consecuencias, siguen siendo dueños de un
condominio de mitad en tres de las fincas ejecutadas a pesar
de la actuación del demandante apoderándose de todas ellas
en su totalidad [y] que el demandante actuó fraudulenta-
mente para obtener la sentencia de este caso con falsas repre-
sentaciones al Tribunal (*misrepresentations*) en cuanto a que
la abuela era la tutora de los menores; con falsas representa-
ciones a la abuela en cuanto a que consideraría a sus nietos
si no proseguía su defensa; obtuvo una indebida ventaja sobre
los menores demandantes dejándoles indefensos, sin solicitar
del Tribunal el nombramiento de un Defensor *ad litem* para
ellos y manteniéndoles ignorantes de sus verdaderos derechos;
y la sentencia que contra los menores se dictó en estas cir-

cunstancias resulta injusta y contraria a la equidad, sin que antes de ahora los demandados tuviesen conocimiento de estas irregularidades y sus consecuencias, ni estuviesen por la extrema pobreza en que les sumió el demandante en condiciones de impugnarla hasta ahora [y] que ninguna tercera persona se perjudicaría con la acción de este Tribunal dejando sin efecto la sentencia de este caso, ya que del Registro, aparecen todavía las fincas de 10.00 cuerdas y de 1.00 cuerda inscritas a nombre de Agapito López Casanovas padre de los demandados y las otras fincas inscritas a nombre mitad de Agapito López Casanovas y mitad a nombre de los aquí demandados, sin que se sepa siquiera que el márshal otorgase escritura de venta a favor del demandante, quien a pesar de ello, sigue en posesión de las mismas."

En la súplica se solicita del Tribunal recurrido, (1) dejar sin efecto, por errónea la sentencia dictada en este caso; (2) restablecer a los demandados en la posesión de las fincas rústicas ejecutadas por la sentencia errónea dictada y (3) dictar cualquier providencia en equidad, que corresponda al derecho de los menores. Copia de la dicha moción le fue notificada por correo certificado el día 5 de abril de 1961 a don Juan Suárez, don Juan Suárez Miranda, doña Encarnación Fuentes de Suárez y a don José Jesús Suárez Fuentes, según parece, los herederos de don Marcial Suárez y Suárez. De estas personas, solamente doña Encarnación Fuentes viuda de Suárez rehusó recibir la copia de la moción, según aparece de la diligencia postal correspondiente. En el original de la moción contra sentencia dictada hay una anotación manuscrita por un Juez del Tribunal Superior de Puerto Rico, Sala de San Juan, que dice así: "Señalar calendario especial mayo 19—2:00 P.M. Notif. Lcdos. R. R. Rivera Correa, L. Sánchez Vahamonde, Sr. Juan Suárez Fuentes, Sr. Juan Suárez Miranda, Sra. Encarnación F. Vda. de Suárez, Sr. José Suárez 5—15—61." Haciendo uso de un modelo para órdenes del Juez del Tribunal, la señora Secretaria, Adelle R. de

Morales, notificó la vista para el 19 de mayo de 1961, a las 2:00 P.M. Parece que el modelo mimeografiado decía "a las nueve de la mañana" pero sobre dicha hora aparece insertada la hora "2:00 P.M." manuscrita. Esto ocasionó que el único abogado que compareció ese día, según parece a representar a don José Suárez Fuentes, compareció a las nueve de la mañana, limitándose a someter la cuestión al Tribunal y el abogado de la Sucesión aquí interventora compareció a las dos de la tarde, y al enterarse que la cuestión había sido sometida por el único miembro de la Sucesión que había comparecido, sometió él a su vez la cuestión mediante una moción radicada el mismo 19 de mayo de 1961 a la cual acompañó un memorandum.

En virtud de dicho sometimiento, la ilustrada Sala sentenciadora, después de reseñar los procedimientos de notificación, señalamiento y la forma como se había sometido el caso por las partes, y haciendo énfasis que no aparecía de los autos ni se había acreditado en forma alguna, que Dolores Cepeda tuviera nombramiento como tutora de sus nietos y no apareciendo tampoco que se le designara defensor judicial alguno a los menores demandados, llegó a la siguiente conclusión: "Si como se ha visto, en el caso bajo estudio los menores no estaban efectivamente bajo la tutela especial de su abuela, por designación judicial que los representase, la sentencia dictada contra ellos es errónea y puede anularse mediante moción a la misma corte que la dictó. Al efecto ha dicho nuestro Hon. Tribunal Supremo: 'La regla prevaleciente en Estados Unidos es que una sentencia dictada en contra de un menor o incapacitado a quien no se le ha nombrado defensor judicial o un tutor, no es nula sino errónea . . .' *Tyrell* v. *Sauri*, 71 D.P.R. 460, pág. 470 [y] ya en un caso anterior había dicho, traduciendo de *American Jurisprudence*: 'El nombramiento de un defensor *ad litem* para un menor demandado, al igual que la comparecencia de un *procheim ami* a nombre de un menor demandante, es una cuestión de procedi-

miento y no de jurisdicción. Que a demandante o demandado faltara tal representación haría la sentencia *errónea* pero no nula. Puede anularse por auto de error coram nobis, o mediante moción a la misma corte o mediante una adecuada apelación, pero se ha resuelto generalmente que la validez de la sentencia no puede ser atacada por este motivo en una acción colateral, en que la sentencia sea sólo un incidente de la controversia.' *Trueba* v. *Martínez*, 33 D.P.R. 461, pág. 474.''

Habiendo llegado a esta conclusión la ilustrada Sala sentenciadora dejó sin efecto, por errónea la sentencia dictada por el propio Tribunal en el caso civil número 14,264, la ejecución de la misma efectuada por el Alguacil y cualquier escritura otorgada por él y a favor del demandante don Marcial Suárez y Suárez para su ejecución, así como cualesquiera inscripciones que la misma pueda haber producido en el Registro de la Propiedad, restableciendo a los dichos herederos de Agapito López Casanovas la plena propiedad y dominio de las fincas y derechos ejecutados a su causante en el caso y ordenando al Alguacil a poner a dichos herederos en posesión de los bienes. La resolución le fue notificada a los abogados concernidos de acuerdo con los autos y a los "componentes de la Sucesión Suárez" según certificación de notificación por correo unida a los autos por la señora Secretaria del Tribunal Superior de fecha 21 de julio de 1961.

El día 11 de agosto de 1961 don Juan Suárez Fuentes, representado por el Lic. Víctor A. Coll, solicita la reconsideración de la resolución dictada por la ilustrada Sala sentenciadora el día 18 de julio de 1961 por los siguientes fundamentos: (a) Suponiendo que los demandados en la acción 14,264 tuvieran derecho a un recurso de *coram nobis*, la forma y manera como se notificó el mismo no es el procedimiento correcto para obtener la corte jurisdicción sobre las personas a quienes se sirvió el auto de *coram nobis*; (b) Que era de conocimiento de dichos demandados que el demandante en la acción 14,264 don Marcial Suárez y Suárez había fallecido

en el año 1949, dejando una Sucesión compuesta por varios miembros, uno de los cuales era el peticionario en esta moción, por lo cual se debió haberle dado su día en corte, mediante los procedimientos estatuidos en el Código Civil de Puerto Rico; (c) Que la resolución dictada asume como hechos probados ciertos *"issues"* que debieron haber sido materia de prueba mediante la comparecencia de las partes para probar en juicio oral las alegaciones infundadas y falsas del auto de *coram nobis*; (d) Que aun suponiendo la validez de la expedición del auto de *coram nobis*, el mismo solamente es efectivo cuando aparece claramente de los propios autos que ocurrieron errores de hechos que no fueron materia de controversia en el pleito original, o que eran desconocidos para el Tribunal que juzgó el caso en aquel entonces y por lo tanto, no fueron materia de controversia y es jurisprudencia constante y efectiva de que los méritos de la original controversia no son cuestiones para presentarse en un auto de *coram nobis*, ya que el derecho al recurso de *coram nobis* descansa en el error de hecho desconocido para los propios demandados en el caso original y (e) Que la solicitud para la expedición de un auto de *coram nobis* radicado el 4 de abril de 1961 sobre una sentencia dictada en el 1934, no solamente es un ataque colateral en forma festinada para destruir las actuaciones de un Tribunal que datan de más de 25 años, sino que en esa forma suplanta y sustituye el derecho estatutario de la reivindicación que es el remedio que nuestros estatutos conceden a las partes para justificar la concesión de un remedio contra los efectos de una sentencia.

La ilustrada Sala sentenciadora dispuso de la moción de reconsideración, de acuerdo con la Regla 47 de Procedimiento Civil, porque habiéndose dictado la resolución el 18 de julio de 1961 y notificada el 21 de julio de 1961, la moción de reconsideración radicada el 17 de agosto de 1961 estaba fuera de término. Si la ilustrada Sala sentenciadora hubiera decidido pasar sobre los fundamentos de la moción

hubiese podido disponer de ella con igual facilidad por las siguientes razones: (a) El recurso de *coram nobis* de naturaleza civil—hoy sustituido por los remedios provistos por la Regla 49.2 de Procedimiento Civil—se presenta como una moción dentro de la misma acción cuya sentencia trata de anularse por fraude extrínseco—*Martínez* v. *Tribunal Superior*, 83 D.P.R. 358 (Santana Becerra) (1961), cita precisa a la pág. 366 y de acuerdo con la Regla 67.2 dicha moción puede notificarse por correo y no mediante el emplazamiento requerido cuando se trata de una nulidad por acción independiente; (b) Si bien no se solicitó la sustitución de parte, la moción solicitando la nulidad y el señalamiento de la misma les fueron notificados por correo certificado a todos los herederos de don Marcial Suárez y Suárez. No siendo los procedimientos estatuidos por nuestro Código Civil los únicos establecidos para obtener la declaración de nulidad por error, bastaban las notificaciones hechas en este caso para darle a la parte su día en corte; (c) no habiendo comparecido la parte, después de ser debidamente citada a alegar en contra de la moción jurada en la cual se alegaba el fraude, y constando de los propios autos, uno de los extremos del fraude extrínseco—no haberse obtenido un nombramiento de tutora especial o una autorización judicial expresa para la abuela supuesta a representar los nietos menores demandados—el Tribunal tenía facultad inherente para corregir sus propias actuaciones dejando sin efecto la sentencia errónea, como una simple cuestión de derecho; (d) si bien en el recurso de *coram nobis* de naturaleza penal es regla que el mismo no procede, en su forma clásica, si no se alega y prueba que los hechos en los cuales se basa la moción eran desconocidos por el Tribunal al momento de dictarse la sentencia, y que de haberse conocido hubieran alterado el resultado de la sentencia, tal regla no existe para una moción de nulidad de sentencia por error en una acción civil basada en fraude al Tribunal. En el supuesto de que existiera tal analogía, es indudable

que en este caso, el Tribunal desconocía, contrario a lo alegado por el demandante en la acción 14,264, que la abuela Dolores Cepeda no era tutora de dichos menores; (e) La solicitud de nulidad de una sentencia dentro de la misma acción que la produce no es un ataque colateral a la sentencia. De serlo, la defensa del impedimento colateral no podría utilizarse para perpetrar una injusticia: *Viera* v. *Comisión Hípica*, 81 D.P.R. 707 (Saldaña) (1960), cita precisa a la pág. 720; *Millán* v. *Caribe Motors Corp.*, 83 D.P.R. 494 (Rigau) (1961), cita precisa a las págs. 508–509. La acción de reivindicación, cuando la misma proceda, no excluye el uso de la moción de nulidad de sentencia por error establecido por la Regla 49.2 de Procedimiento Civil.

■ Contra la resolución dejando sin efecto la sentencia por error, doña Encarnación Fuentes viuda de Suárez y don José Suárez Fuentes, como herederos de don Marcial Suárez y Suárez comparecieron en este recurso solicitando la corrección de dicha diligencia por tratarse de una cuestión de procedimiento. Posteriormente, se solicita que se elimine de la petición a la señora Encarnación Fuentes viuda de Suárez, pues su inclusión como peticionaria es un error involuntario. Fue esta misma señora quien rehusó recibir la carta certificada en la cual se le enviaba copia de la moción solicitando la nulidad de la sentencia. El hecho de retirarse de la petición de *certiorari* y de haber rehusado recibir por correo la copia de la moción, no la deja fuera de la autoridad del Tribunal, puesto que, de acuerdo con la última disposición de la Regla 67.2, la notificación por correo queda perfeccionada al ser depositada en el correo. Además ningún Tribunal estaría dispuesto a favorecer una conducta tan contumaz.

El único peticionario ahora, don José Suárez Fuentes, se queja que la ilustrada Sala sentenciadora dejó sin efecto la sentencia por errónea antes de resolver ciertas cuestiones de derecho presentadas oralmente por el peticionario cuando compareció a la vista señalada para el 19 de mayo de 1961,

a las nueve de la mañana en vez de comparecer a las dos de la tarde. De acuerdo con el alegato del peticionario las cuestiones de derecho presentadas oralmente solicitando declarar sin lugar la moción de nulidad, eran tres: (1) que el peticionario no había sido emplazado, (2) que la solicitud de nulidad constituía un ataque colateral a la sentencia, (3) y que la parte promovente no había comparecido a la vista. De la segunda cuestión nos hemos ocupado al examinar los méritos de la moción de reconsideración presentada por el señor Juan Suárez Fuentes. En cuanto a la tercera, ya hemos aclarado el error en la hora del señalamiento de acuerdo con las constancias de los propios autos.

En cuanto a que los herederos de don Marcial Suárez y Suárez han debido ser emplazados y no citados, punto ya cubierto anteriormente, el único nuevo fundamento aducido es que la falta de dicho emplazamiento privaba al peticionario de haber presentado la defensa de cosa juzgada. La defensa de cosa juzgada no procede ante una alegación de fraude—*Bolker* v. *Tribunal Superior*, 82 D.P.R. 816 (Blanco Lugo) (1961), cita precisa a la pág. 824; *Aybar* v. *Vara*, 51 D.P.R. 186 (Córdova Dávila) (1937), cita precisa a las págs. 189–191. Tampoco procedería la defensa de cosa juzgada si con ella se derrotan los fines de la justicia—*Pérez* v. *Bauzá*, 83 D.P.R. 220 (Blanco Lugo) (1961), cita precisa a las págs. 226–227; *Viera* v. *Comisión Hípica*, 81 D.P.R. 707 (Saldaña) (1960), cita precisa a la pág. 720.

Las otras cuestiones no cubiertas por esta opinión presentadas en este recurso son las siguientes: (1) Haber determinado el Tribunal recurrido que los menores en cuestión no estaban ni bajo la tutela de su abuela ni tenían defensor judicial sin tener base alguna en el récord para llegar a tales determinaciones; (2) por haber el Tribunal recurrido determinado que no se emplazó a las partes demandadas en el caso por el solo hecho de que en el emplazamiento consta, claramente por error, haberse emplazado a Benjamín en vez

de Benjamina López Cepeda y a Amelia en vez de Aurelia López Cepeda, a pesar de que dichas personas estaban debidamente identificadas en el epígrafe del caso como los componentes de la Sucesión de Agapito López e hijos menores del mismo; (3) porque aun cuando dichas personas no hubiesen sido emplazadas se sometieron a la jurisdicción del Tribunal recurrido al comparecer al Tribunal representados por abogados y plantear cuestiones de derecho que impugnaban la jurisdicción del Tribunal sobre la persona; (4) por no estar el procedimiento seguido en el presente caso provisto por las Reglas de Procedimiento Civil y en particular por no haberse seguido dentro del término provisto por la Regla 49.2.

1. El peticionario siempre partió del supuesto que la moción solicitando se dejara sin efecto la sentencia por errónea, era una acción impediente, que requería nuevos emplazamientos, y que no procedía por constituir un ataque colateral contra una sentencia anterior y no contestó la alegación jurada de la promovente en la cual se alegaba que la abuela Dolores Cepeda no era tutora de los menores demandados. El efecto de haber sometido la impugnación a la sentencia por dichos fundamentos de derecho únicamente, era dejar admitido el hecho de que la señora Dolores Cepeda no era tutora de dichos menores. Además, si en realidad de verdad, la señora Cepeda era tutora de dichos menores fácil le hubiera sido alegarlo y probarlo con los propios autos del Tribunal recurrido. Es bueno recordar que al momento de dejar sin efecto una sentencia por errónea, el Tribunal actúa en virtud de la facultad inherente que le reconoce la jurisprudencia, para corregir sus propios procedimientos, incluso tomando conocimiento judicial de sus propios autos. Todavía en el recurso ante nos, el peticionario no alega afirmativamente que la señora Dolores Cepeda fuera tutora de dichos menores al momento de iniciarse la acción 14,264. Aún en el supuesto de que fuera tutora, no hay constancia en los autos del caso 14,264 que estuviera autorizada para defender

a sus pupilos—2 Manresa—*Comentarios al Código Civil Español*, 442 Sexta edición Reus 1944. Como se ve, se trata, antes que nada, de un refinamiento procesal, cuyo único fin sería dilatar los altos fines de la justicia.

2-3. Como no se trataba de un procedimiento ejecutivo hipotecario de carácter sumario—como cuestión de realidad la hipoteca nunca fue inscrita—con su peculiar sistema de notificación a cualquier persona con interés presumible o al que esté frente a la finca, por sus reducidas causas de impugnación, sino de una acción para el cobro de una obligación escrituraria, hubo necesidad de expedir emplazamientos y adquirir jurisdicción sobre las personas demandadas. Si bien el Tribunal recurrido, por las constancias de sus autos, llega a la conclusión que los errores de los nombres y el cambio de sexo de las partes descritas demostraban que el Tribunal no había adquirido jurisdicción sobre ellas, el verdadero fundamento de su resolución dejando sin efecto la sentencia fue la falta de representación y de autorización de la tutora para obligar en alguna forma a los menores al fallo en rebeldía.

4. El simple transcurso del tiempo no es razón para dejar sin efecto la resolución declarando una anterior sentencia errónea por fraude extrínseco, como el que presenta este caso—*Martínez* v. *Tribunal Superior*, 83 D.P.R. 358 (Santana Becerra) (1961), cita precisa a las págs. 364-370.

*Debe anularse el auto expedido.*