# 2006 DTA 32

**TRIBUNAL DE CIRCUITO DE APELACIONES
REGIÓN JUDICIAL DE BAYAMÓN
PANEL VIII**

CONSEJO DE TITULARES DEL CONDOMINIO TORRES DEL PARQUE, *ET ALS*.
Recurridos

v.

TORRES DEL PARQUE, S.E.; F & R CONSTRUCTION, CORP.
Recurrentes

Núm. KLRA-2005-00733

San Juan, Puerto Rico, a 20 de diciembre de 2005

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Miranda De Hostos y la Juez Pabón Charneco

Arbona Lago, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

En la causa del epígrafe, la parte recurrente, Torres del Parque, S.E. (Torres del Parque), solicita que revisemos la Resolución emitida y notificada el 7 de julio de 2005 por el Departamento de Asuntos del Consumidor (DACO), en la que se le ordenó reembolsar al recurrido, Consejo de Titulares del Condominio Torres del Parque (Consejo de Titulares) la suma de $419,253.99 por concepto de la reparación y

modernización de los ascensores del condominio.

## Hechos

Allá para el mes de febrero de 1993, la compañía desarrolladora Torres del Parque suscribió un contrato de compraventa con la desaparecida Corporación para la Renovación Urbana y Vivienda (CRUV) en virtud del cual adquirió un complejo de apartamentos (consistente en dos edificios) sitos en el Municipio de Bayamón, P. R. Torres del Parque se obligó a rehabilitar las unidades mediante el financiamiento provisto por el Banco y Agencia para el Financiamiento de la Vivienda de Puerto Rico para, consecuentemente, venderlas como un proyecto de viviendas de interés social. El precio de venta por unidad quedaría fijado según la tasación de FHA por lo que a Torres del Parque, dueña del proyecto, le estaba vedado variar el mismo. █

Como parte de la remodelación requerida, Torres del Parque contrató los servicios de Vermil Elevator System & Services, Inc. (Vermil) para que como perito en sistemas de ascensores, evaluara la condición de los 6 ascensores y sometiera un informe detallando las reparaciones que se debían realizar. El estudio arrojó un costo estimado de $149,200.00. Asimismo, Torres del Parque contrató con F & R Construction Corp. (F & R) la rehabilitación de los ascensores del complejo, según el estudio y recomendaciones realizadas por Vermil.

Así las cosas, concluidos los trabajos, sometido, los dos edificios a régimen horizontal, individualizados y vendidos condominios, según acordado a familias de recursos módicos, pero estando el condominio todavía bajo la administración del desarrollador Torres del Parque, el 10 de noviembre de 1994 varios condóminos radicaron ante el DACO la querella QRC-B-95-828, contra Torres del Parque, por alegados defectos de construcción. █ En lo aquí relevante, alegaron que *"[l]os elevadores están en condiciones pésimas, se dañan a diario, afectando el disfrute de los titulares de su propiedad."* (Ap., pág. 3.)

A mediados del año 1995 y antes de la primera vista ante DACO, F & R efectuó trabajos en los ascensores acorde a las recomendaciones de Vermil, para el reacondicionamiento de los elevadores. No obstante, el trámite administrativo siguió su curso y el caso fue llamado para una primera vista el 15 de agosto de 1995. En cuanto a los ascensores, se acordó llevar a cabo una investigación para determinar qué otras reparaciones, si alguna, se tendrían que hacer a los mismos.

El 2 de noviembre de 1995, Torres del Parque entregó la administración del condominio al recién constituido Consejo de Titulares, quien contrató a la compañía Metro Elevator para que de ahí en adelante brindara mantenimiento a los ascensores, función que hasta ese momento efectuaba Vermil.

Pasados casi dos años desde la celebración de la primera vista administrativa ante el DACO, el proceso continuó los días 7 y 30 de julio de 1997. Analizados y aquilatados los testimonios y la prueba documental practicada, el 17 de septiembre de 1997, el DACO desestimó la querella al concluir que las deficiencias de los elevadores provenían de la falta de mantenimiento adecuado a partir de que el Consejo de Titulares asumió la administración de los edificios en noviembre de 1995 y contrató a Metro Elevador el mantenimiento de los 6 ascensores y no debido a un incumplimiento por parte del desarrollador del proyecto y pasado administrador del complejo, Torres del Parque.

El Consejo de Titulares recurrió de tal dictamen ante el anterior Tribunal de Circuito de Apelaciones (TCA) y mediante Sentencia del 30 de junio de 1998 (KLRA-97-00754), el TCA revocó al DACO, al concluir que la responsabilidad por las fallas de los ascensores era de Torres del Parque y no así del Consejo de Titulares, pues, entre otras razones, señaló que la querella original se instó en noviembre de 1994, casi un año antes de que el propio Consejo de Titulares se constituyera en noviembre de 1995. █ Torres Del Parque presentó una petición de *Certiorari* ante el Tribunal Supremo, que fue declarada no ha lugar mediante Resolución del 20 de noviembre de 1998 (CC-98-682).

El 23 de julio de 1998, el Consejo de Titulares efectuó una asamblea extraordinaria en la que aprobó una derrama por $478,000.00 para la reparación y modernización de los seis elevadores del condominio.

Los procedimientos ante el DACO prosiguieron en consonancia con el dictamen del TCA, por lo que el 9 de octubre de 1998, el DACO emitió una Resolución y Orden en la que dispuso que Torres del Parque tendría que "*corregir satisfactoriamente los elevadores del Condominio Torres del Parque dentro del plazo de sesenta (60) días*". (Ap., pág. 47) y de no hacerlo en el término establecido el Consejo de Titulares podría proceder a ello y requerir a Torres del Parque el reembolso del costo de la reparación.

Vencido el plazo otorgado sin que Torres del Parque actuare a tenor con lo ordenado por DACO, el Consejo de Titulares optó por gestionar tal reparación y requirió una cotización de Security Elevator Services, Inc. (Security), quien, tras una evaluación de la condición de los elevadores, el 19 de marzo de 1999, cotizó el trabajo en $489,977.00. El Consejo de Titulares contrató a Security y los trabajos comenzaron en el año 1999, culminando en el segundo semestre del 2004, a un costo de $419,253.99.

El trámite administrativo de la querella continuó con la celebración de vista los días 13 de abril y 10 de junio de 2005, con el propósito de cuantificar los gastos en que incurrió el Consejo de Titulares en la reparación de los ascensores del condominio. El 7 de julio de 2005, el DACO emitió Resolución en la que ordenó a Torres del Parque reembolsar al Consejo de Titulares la suma de $419,253.99 por la reparación de los elevadores, conforme al Artículo 1051 del Código Civil, 31 LPRA § 3015. ■ Al mismo tiempo desestimó la querella en cuanto a la querellada F & R, por ausencia de prueba en su contra. El foro administrativo concluyó que:

"*...el deterioro y la falta de mantenimiento de los ascensores no era un asunto nuevo. Esto fue parte integral de la querella desde el año 1994, cuando la parte querellada era aún el administrador interino del condominio. No existe prueba alguna en el expediente de que dicha falta de mantenimiento pueda ser imputada a la parte querellante. Es por esta razón que ya se determinó la responsabilidad de la parte querellada por la reparación de los ascensores. La co-querellada, Torres del Parque [,] S.E. tuvo suficiente oportunidad de corregir satisfactoriamente los ascensores desde la presentación de la querella y no lo hizo. Debe asumir la responsabilidad del costo de dicha reparación.*" (Ap., págs. 74-75.)

Oportunamente, Torres del Parque solicitó al DACO la reconsideración de su determinación, la cual fue declarada no ha lugar mediante resolución del 8 de septiembre de 2005.

No conforme, Torres del Parque recurre vía la causa del epígrafe e imputa al DACO incidir de la siguiente forma:

"*PRIMER ERROR*

*ERRO EL DACO AL DETERMINAR QUE LA OBLIGACION DE LA RECURRENTE ERA MODERNIZAR EN LUGAR DE REPARAR LOS ELEVADORES Y VALIDAR EL CAMBIO TOTAL DEL SISTEMA DE ESTOS A UN ELEVADO COSTO.*

*SEGUNDO ERROR*

*LAS DETERMINACIONES DE HECHOS DE DACO NO SON SUSTENTADAS POR EVIDENCIA SUSTANCIAL, PUES LA PROPIA PRUEBA DE LA RECURRIDA IMPUTA EN UN 50% LA NECESIDAD DE REPARACIONES MAYORES A LA AUSENCIA DE MANTENIMIENTO DE LOS ELEVADORES DURANTE EL TIEMPO QUE EL CONSEJO DE TITULARES TUVO LA ADMINISTRACIÓN.*"

La parte recurrida no ha comparecido en autos conforme lo autoriza la Regla 63 del Reglamento del

Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. La causa está sometida. Con el beneficio de la transcripción oficial de los procedimientos llevados a cabo ante el DACO el 13 de abril y 10 de junio de 2005, procedemos a resolver.

## Exposición y Análisis

Habida cuenta de que los dos señalamientos de error están estrechamente relacionados, los atenderemos conjuntamente.

Como se sabe, en esta jurisdicción la función revisora de los tribunales apelativos respecto a dictámenes administrativos es limitada y debemos conferir un alto grado de deferencia al foro especializado. *Asoc. Res. Pórticos v. Compad, S.E.*, 163 DPR ___ (2004), **2004 JTS 204**; *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425 (1997); *Metropolitana S.E. v. A.R.P.E.*, 138 DPR 200 (1995). Ello es así por razón de que tales procedimientos tienen a su favor una presunción de regularidad y corrección que ha de ser respetada, *Murphy Bernabe v. Tribunal Superior*, 103 DPR 692, 699 (1975), y, además, porque son agencias que de ordinario cuentan con la experiencia y conocimientos especializados sobre los asuntos que se encuentran bajo su encomienda. *Fac. C. Soc. Aplicadas, v. C.E.S.*, 133 DPR 521, 533 (1993).

La Sección 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo Uniforme (LPAU), establece los límites al alcance de la revisión judicial de decisiones administrativas. A tal fin, dispone que de ordinario los tribunales no intervendrán con las determinaciones de hechos de un organismo administrativo cuando se encuentran fundamentadas en suficiente evidencia sustancial que surja del expediente administrativo, considerado en su totalidad. 3 LPRA 2175; *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70 (2000). Entendemos que evidencia sustancial se refiere a aquella *"evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión"*. *Rebollo Vda. de Liceaga v. Yiyi Motors*, 161 DPR ___ (2004), **2004 JTS 4**; *Mun. de San Juan v. J.C.A.*, 152 DPR 673 (2000); *Adm. de Terrenos v. U.I.E.A.T.*, 149 DPR 65 (1999); *Ramírez v. Depto. de Salud*, 147 DPR 901 (1999); *Misión Ind. P.R. v. J.P.*, 146 DPR 64 (1998); *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 687 (1953); *Fac. C Soc. Aplicadas v. C.E.S.*, supra, pág. 521. La evidencia debe ser considerada en su totalidad, incluyendo tanto aquélla que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, supra, pág. 425.

Sin embargo, la deferencia reconocida no equivale a la renuncia de nuestra función revisora en instancias apropiadas y meritorias, como resulta ser cuando la agencia actúa de forma arbitraria, ilegal, irrazonable o cuando la determinación no queda sostenida por prueba sustancial en la totalidad del expediente. *Reyes Salcedo v. Policía de P.R.*, 143 DPR 85, 95 (1997); *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 DPR 656, 673-74 (1997); *Fuertes y otros v. A.R.P.E.*, 134 DPR 947 (1993).

La parte que impugna la determinación de la agencia tiene el peso de probar que el dictamen fue arbitrario, irrazonable o que se tomó en ausencia de evidencia sustancial, todo lo cual implica error manifiesto. *Gallardo v. Petiton*, 132 DPR 39 (1992); *Henríquez v. C.E.S.*, 120 DPR 194 (1987); *Rivera Pérez v. Cruz Corchado*, 119 DPR 8 (1987). Para que un tribunal pueda concluir que la evidencia que obra en el expediente administrativo y sobre el cual la agencia fundamentó su dictamen no es sustancial, la parte afectada debe demostrar que existe *"otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada... y hasta el punto que se demuestre claramente que la decisión de la [agencia] no está justificada por una evaluación justa del peso de la prueba"* que tuvo ante su consideración. *Metropolitana S.E. v. A.R.P.E.*, supra; *Hilton Hotels v. Junta Salario Mínimo*, supra.

Cuando ante el tribunal revisor se demuestra que en autos existe prueba que menoscaba las determinaciones

de hechos adoptadas por la agencia, el tribunal revisor debe proceder a reexaminar el expediente administrativo en su totalidad, para determinar respecto a la corrección de la apreciación fáctica administrativa, con el principal propósito de auscultar si la determinación administrativa está sostenida por la prueba practicada. *Ramírez v. Depto. de Salud, supra*; *Domínguez v. Caguas Expressway Motors, Inc., supra*. Ello tiene el propósito de evitar que la parte afectada impugne las determinaciones de hechos con meras alegaciones de naturaleza conclusoria, a la vez que respeta la presunción de corrección y legalidad de que disfrutan las decisiones administrativas. *Ramírez v. Depto. de Salud, supra*; *Com. Vec. Pro-Mej., Inc. v. J.P.*, 147 DPR 750 (1999); *Catalytic Ind. Maint. Co. v. F.S.E.*, 121 DPR 98, 101-02 (1988).

El recurrente, Torres del Parque, expone que las determinaciones de hechos del DACO no se apoyan en la totalidad de la evidencia sustancial, ya que del propio testimonio del perito de la parte querellante, aquí recurrida, quedó establecido que el 50% de la labor que tuvo que realizar Security en los ascensores del condominio, fue a consecuencia directa de la falta de mantenimiento adecuado brindado a los elevadores desde que la querellante (Consejo de Titulares) comenzó a administrar el complejo el 2 de noviembre de 1995. Aduce, además, que la otra mitad de los trabajos realizados obedeció a gastos en la modernización del sistema de los ascensores, por lo que considera improcedente exigirle el reembolso del gasto incurrido por el Consejo de Titulares en tal cambio del sistema, debido a que la orden del DACO fue **reparar** y no **modernizar** los ascensores.

Según señaláramos anteriormente, de la resolución recurrida se colige que el DACO enfatizó que la responsabilidad de Torres del Parque por las deficiencias en los ascensores ya había sido adjudicada por el TCA, mediante sentencia del 30 de junio de 1998, por lo que sólo restaba cuantificar los gastos en que incurrió el Consejo de Titulares en los ascensores y ordenar a Torres del Parque el correspondiente reembolso. Además, el foro recurrido apuntó que en el récord administrativo no existía prueba alguna que estableciera que la falta de mantenimiento de los ascensores era responsabilidad del Consejo de Titulares. Erró al así concluir. Veamos.

Reiteradamente se ha resuelto en esta jurisdicción que la doctrina de cosa juzgada (*res judicata*), con base estatutaria en el Artículo 1204 del Código Civil, 31 LPRA 3343, tiene el efecto de evitar que en un pleito posterior se litiguen asuntos que ya fueron o pudieron haber sido litigados en un pleito anterior. Tal norma se funda en valiosas consideraciones de necesidad y orden público, con el objetivo de poner fin a los litigios, luego de haber sido el asunto adjudicado en forma definitiva por el tribunal o foro administrativo en función cuasi-judicial. Ello persigue lograr certidumbre, estabilidad y seguridad respecto a los derechos ya declarados, evitando gastos adicionales al Estado y litigantes. *Worldwide Food Dis., Inc. v. Colón et al.*, 133 DPR 827 (1993); *Rodríguez Rodríguez v. Colberg Comas*, 131 DPR 212 (1992); *Banco de la Vivienda v. Carlo Ortiz*, 130 DPR 730 (1992). Para que la presunción de cosa juzgada surta efecto, es necesario que entre el caso resuelto anteriormente y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. ■

En la esfera administrativa, en la que también aplica la doctrina, ésta consiste de tres vertientes:

*"1) interagencial o entre determinaciones tomadas por distintas agencias; 2) intragencial o respecto a determinaciones tomadas dentro de la misma agencia, y 3) entre el tribunal y la agencia. **La aplicabilidad de esta defensa en el foro administrativo es flexible y depende de la naturaleza de la cuestión planteada.**"*

Como se sabe, las normas que rigen la doctrina de la cosa juzgada no son camisa de fuerza ni reglas inflexibles, debido a que, precisamente, la cosa juzgada atiende a un llamado superior del hacer justicia, para arribar a *"... la solución que garantice cumplida justicia, en lugar de favorecer en forma rígida una ficción de ley que obedece fundamentalmente a un principio de conveniencia y orden procesal"*. *Pérez v. Bauzá*, 83 DPR 220, 226 (1961); *Lausell Marxuach v. Díaz de Yáñez*, 103 DPR 533, 537 (1975).

Por ello, nuestro más alto foro judicial ha reconocido varias excepciones a la aplicación de la doctrina de cosa juzgada, entre otras, aquellos casos que están permeados de consideraciones de orden público, *Millán v. Caribe Motors Corp.*, 83 DPR 494 (1961); fraude, *Suárez Fuentes v. Trib. Superior*, 88 DPR 136 (1963); o **cuando su aplicación derrotaría los fines de la justicia**. *Feliciano Ruiz v. Alfonso Develop. Corp.*, 96 DPR 108 (1968). (Énfasis nuestro.)

En la causa de marras, el propio perito de la parte querellante y gerente general de Security, Sr. Ernesto L. Bravo Ortiz (Sr. Bravo), expuso que al momento de evaluar la condición de los ascensores -hecho que ocurrió para el mes de marzo de 1999-, encontró que los tres ascensores de la Torres Norte se encontraban en graves condiciones, no funcionaban adecuadamente, pues sólo trabajaban por hora, Transcripción (T.), págs. 22-23, y los de la Torre Sur operaban sólo entre un 50 a un 60 % de su capacidad. (T., pág. 31.)

Al ser cuestionado por el representante legal de Torres del Parque sobre su opinión en cuanto al mantenimiento brindado a los ascensores por el Consejo de Titulares, desde que comenzaron a administrar el condominio en el mes de noviembre de 1995, el Sr. Bravo contestó categóricamente que el mantenimiento fue nulo. (T., pág. 74.) Asimismo, el Sr. Bravo señaló que el 50% del total de la labor en los ascensores se debió a falta de mantenimiento, lo que afectó esencialmente la parte mecánica de éstos. También señaló que el otro 50% correspondía a la modernización del sistema. (T., pág. 75.) Preciso es aquí señalar que el DACO brindó total credibilidad al testimonio del Sr. Bravo.

De la Resolución recurrida se desprende con meridiana claridad que mediante el testimonio del Sr. Bravo el DACO concluyó que *"las condiciones de los ascensores eran a tal grado de deterioro, que requerían se efectuara una reparación mayor..."*. (Ap. pág. 73). Sin embargo, el DACO no utilizó dicho testimonio para arribar a alguna determinación de hecho o conclusión de derecho respecto a la ausencia de mantenimiento de los ascensores desde que el Consejo de Titulares comenzó a administrar los edificios, el 2 de noviembre de 1995, amparándose en que el dictamen del TCA había adjudicado ya la responsabilidad por tales deficiencias en contra de Torres del Parque.

Por tanto, estamos ante una de las situaciones excepcionales que hacen inaplicable la doctrina de cosa juzgada. Como vemos, el Sr. Bravo destapó la caja de pandora y quedó establecido, mediante la evaluación que realizó en los ascensores, la ausencia de mantenimiento de éstos desde que el Consejo de Titulares tomó a su cargo la administración del condominio en el 1995 y contrató el mantenimiento de los ascensores a la firma Metro Elevators. Ante tal prueba contundente sería un descarrío de la justicia no variar la sentencia del TCA antes referida, que imputó tal responsabilidad de las deficiencias de los ascensores en el desarrollador Torres del Parque. Debemos aquí modificar dicho dictamen en aras de la justicia sustancial, acorde a la norma antes expuesta.

Trasciende del expediente administrativo que Security dividió los trabajos que efectuó en los ascensores en cuatro fases, que fueron cotizadas en las siguientes cantidades: (a) primera fase - $98,800; (b) segunda fase - $80,000; (c) tercera fase - $58,805, y (d) cuarta fase - $252,372, para un costo total cotizado y pagado de $489,977. Para efectos de la discusión, identificamos las primeras tres fases como Parte A y la cuarta fase como Parte B.

A su vez, surge del récord que el trabajo se facturó y pagó conforme se iba completando. La parte querellante presentó en evidencia diecisiete (17) cheques emitidos por el Consejo de Titulares a favor de Security que totalizan la cantidad de $491,253.99. ■ No obstante, el DACO concluyó que *"[l]a parte querellante pagó un total de $419,253.99, por la reparación y modernización de los ascensores..."* y ordenó el reembolso de tal cantidad. (Ap., pág. 74.) De autos no surge el porqué el DACO arribó a la suma de $419,253.99, por lo que ante la prueba documental (cheques) practicada ante dicho foro, podemos concluir que se trató de un error en la suma de las cantidades de los cheques pagados a Security. Ahora, de autos no surge

qué cantidad dentro de la suma que se pagó a Security, corresponde a cada una de las fases, pues no se presentó en evidencia un desglose o facturas correspondientes a los trabajos dentro de cada una de las cuatro fases. Sin embargo, ello no es óbice para concluir que conforme a la prueba practicada, los trabajos de la parte A fuera necesarios realizarlos **debido a la ausencia de mantenimiento desde noviembre de 1995** en que el Consejo de Titulares comenzó a administrar el condominio; esta responsabilidad no puede recaer sobre Torres del Parque. Por lo tanto, el reembolso respecto a la parte A se elimina totalmente, por no ser responsabilidad de Torres del Parque.

Nos resta considerar la parte B, que incluye solamente el costo de la sustitución de los equipos antiguos por los modernos. Torres del Parque alega que la orden emitida por el DACO, conforme el dictamen del TCA, fue la de **reparar** y no la de **modernizar** los ascensores. Por su parte, el Consejo de Titulares argumenta que ante el deterioro que presentaban los elevadores, la modernización era necesaria para lograr la corrección satisfactoria de los mismos, puesto que en tal fase costaba igual sustituir sistemas (modernizar) que reparar.

No está claro en autos si en cuanto a la parte B también medió falta de mantenimiento o sólo responde al interés del condominio en modernizar su equipo de 6 ascensores. Por lo tanto, es necesario devolver el caso al foro administrativo para que ante el DACO se practique prueba y adjudique si procede o no el reembolso al Consejo de Titulares de todo o parte del costo incurrido en la labor de modernización del sistema de ascensores (parte B) dentro de los siguientes parámetros:

*"(1) se determine qué parte, si alguna, dentro de la parte B, responde a la falta de un mantenimiento adecuado dentro del período comprendido entre los años 1995 y 1999.*

*(2) se determine qué parte, si alguna, dentro de la parte B, está directamente atada la reparación realizada por Torres del Parque a mediados del año 1995 y nunca funcionó bien, no obstante las subsiguientes reparaciones hechas por Torres del Parque.*

*(3) se determine qué parte, si alguna, dentro de la parte B, pudiera considerarse como un nuevo beneficio para los condóminos en la modernización del equipo de ascensores que no deba ser impuesto a Torres del Parque, por tratarse de servicio o facilidades distintas a las existentes cuando se constituyó el régimen horizontal."*

## Dictamen

Todas las determinaciones anteriores, se hacen formar parte integral de este dictamen.

Conforme a lo aquí expuesto, revocamos la resolución recurrida y en su lugar determinamos que el Consejo de Titulares del Condominio es el responsable por la ausencia de mantenimiento de los ascensores del condominio durante el período de noviembre de 1995 a 1999, lo que a su vez ocasionó en un cincuenta por ciento (50%), la necesidad de las reparaciones hechas por Security Elevator Services. Por tanto, no puede reclamar a Torres del Parque reembolso en tal partida, que incluye las primeras tres fases de los trabajos realizados por Security Elevator Services, pues se realizaron como consecuencia de la ausencia de mantenimiento imputada al Consejo de Titulares.

Finalmente, y en cuanto al reembolso por el gasto incurrido en la modernización del sistema de ascensores (Parte B), devolvemos el caso al DACO para que reciba prueba y adjudique conforme a los 3 parámetros aquí establecidos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones